STATE of Maine

v.

**Michael GARDNER.**

Supreme Judicial Court of Maine.

Argued March 10, 1986.

Decided May 21, 1986.

Janet T. Mills, Dist. Atty. (orally), South Paris, for plaintiff.

Cloutier, Joyce, Dumas & David, John C. McCurry, (orally), Edward S. David, Livermore Falls, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN and GLASSMAN, JJ.

GLASSMAN, Justice.

The State appeals from an order of the Superior Court (Oxford County) granting the defendant Michael Gardner's motion to suppress statements claimed to have been taken from him in violation of the fifth amendment of the United States Constitution. The State contends that the suppression justice's reliance on the definition of custody recently articulated in *State v. Thibodeau*, 496 A.2d 635, 638 (Me.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1799, 90 L.Ed.2d 343 (1986), was misplaced. Because we agree, we vacate the order.

At the hearing on Gardner's motion to suppress, Corporal Harold Savage and Detective Hubert Carter of the Maine State Police testified about their investigation of the death of David O'Leary on Route # 17 in Roxbury, Maine, on April 6, 1985. In the two days following the accident, their investigation had revealed that on the night of the accident a pedestrian, walking not far from where O'Leary's body was found, identified Gardner's Jeep as one of two vehicles he had seen on the side of the road. At the "Okay Corral," located north of the accident scene, another individual had seen a Jeep and a second vehicle leaving the Okay Corral at approximately the time of the accident. That person provided information as to the driver of the Jeep from which a composite drawing was prepared that bore a striking resemblance to Gardner. Pieces of plastic that appeared to have come from a vehicle and part of a hood latch were found at the scene.

The two officers had learned Gardner was the registered owner of a Jeep before going to his residence on April 9 where they noticed a Jeep in the open garage. When the twenty-five-year-old Gardner an-

swered the door, the officers, both wearing plain clothes, identified themselves and advised him they were investigating the Roxbury accident.

After a brief conversation, Gardner accompanied the officers to the garage to inspect the Jeep. The Jeep was wet, missing its hood latches, and was dented. Gardner showed the officers the hood latches that he had removed and put in a solvent in the basement of his residence. The officers observed that a piece missing from a hood latch appeared to match that found at the accident scene. Detective Carter then told Gardner he felt they needed to "have a very serious talk about the accident, his vehicle, and [his] involvement" in the accident. The three had just seated themselves at the kitchen table when Gardner's mother arrived. Because she was "very upset" and the difficulty of interviewing either in the presence of the other became obvious, Gardner agreed to accompany Corporal Savage to the police car parked outside the Gardner residence to continue the interview.

On the way to the police car, Gardner was neither handcuffed nor taken by the hand or arm. The four-door unmarked police car had no blue lights, siren, or screen between the front and back seat. Gardner got in the back seat of the car and Corporal Savage the front seat. The car was left unlocked. During the interview that lasted between ten and thirty minutes, Gardner made several incriminating statements.

After the conversation in the police car, Corporal Savage left to obtain a warrant for the Jeep and Detective Carter remained at the Gardner residence to secure the vehicle until Savage returned. During that period of time, Detective Carter overheard Gardner make additional incriminating statements to his mother. In response to Gardner's inquiry, Detective Carter told him there was no reason Gardner could not

go outside since he was not under arrest. Gardner was not advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He was never at any time informed he was under arrest or restricted to any area.

Two months later Gardner was indicted for manslaughter (Class B), 17–A M.R.S.A. § 203 (1983 & Supp.1985–1986). Gardner filed a motion to suppress *inter alia* all the statements made by him on April 9. After hearing, the court granted Gardner's motion to suppress the statements made by him to Corporal Savage while they were in the police car. The court found that Gardner was in custody while in the police car and should accordingly have been advised of his *Miranda* rights. His finding of custody was in reliance upon our definition of custody in *Thibodeau,* 496 A.2d at 638,[1] where we stated:

"A person is in custody for the purpose of *Miranda* only when he is deprived of his freedom in some significant way, or would be led, as a reasonable person, to believe he was not free to leave the presence of the police." *Bleyl,* 435 A.2d at 1358 (citations omitted); *see also United States v. Rule,* 594 F.Supp. 1223, 1234 (D.Me.1984) (whether a reasonable person in defendant's position would likewise have thought he was not free to go). The latter portion of our definition of "custody" is consistent with the United States Supreme Court's analysis of when a person has been "seized" within the meaning of the Fourth Amendment.

 We have never decided that the Maine Constitution requires the warnings provided in *Miranda,* 384 U.S. at 479, 86 S.Ct. at 1630, be administered to a person undergoing custodial interrogation under penalty of exclusion of the evidence secured. *See State v. Bleyl,* 435 A.2d 1349,

---

**1.** In his order on request for findings of fact, the suppression justice concluded:

The facts in this case are sufficiently similar to those in *State v. Thibodeau,* 496 A.2d 635

(Me.1985), so as to compel this court's conclusion that defendant was in a "custodial setting" while in the police cruiser within the meaning of *State v. Thibodeau....*

1358 (Me.1981).[2] Whether *Miranda* is applicable in any given situation is accordingly a matter of federal constitutional law. *Id.* We have in several previous cases made clear that even though a decision of the Supreme Court of the United States is the supreme law of the land on a federal constitutional issue, in the interests of existing harmonious federal-state relationships it is a wise policy that we accept, so far as reasonably possible, a decision on a federal constitutional issue rendered by the United States Court of Appeals for the First Circuit. *See Littlefield v. State Department of Human Services,* 480 A.2d 731 (Me.1984); *State v. Knowles,* 371 A.2d 624 (Me.1977); *State v. Lafferty,* 309 A.2d 647 (Me.1973).

On the appeal from *United States v. Rule,* 594 F.Supp. 1223 (D.Me.1984), vacated sub nom., *United States v. Streifel,* 781 F.2d 953 (1st Cir.1986), the First Circuit vacated the holding of the district court. That court held the district court "mistakenly thought" that the principal criterion for determining whether Rule's co-defendants, Streifel and Quinn, were in custody for the purpose of *Miranda* was whether "a reasonable person in defendant's position would have believed he was not free to leave." *United States v. Streifel,* 781 F.2d at 960. The court recognized that although this was the standard for determining whether a person had been seized within the meaning of the fourth amendment, the issue of custody for the purpose of the fifth amendment should not turn on this factor alone. Rather, it is only one factor among a host of those to be considered in determining whether the "suspect's freedom of action is curtailed *to a 'degree associated with formal arrest.'"* *Id.* at

961 (quoting *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984) (citation omitted)).[3] Until the Supreme Court of the United States decides otherwise, it seems appropriate that we adhere to our policy of deference to the First Circuit, particularly when, as in the instant case, the identical definition of "custody" for the purposes of *Miranda* was set forth in *Thibodeau* as was by the district court in *Rule.* Here the trial court focused on the *Thibodeau* definition of custody as dispositive of that issue for *Miranda* purposes, and "it did not make all the findings from which it can be ascertained whether a reasonable person in [the defendant's] position would have believed, not merely that he was not free to go, but that he was actually in custody and 'at the mercy of the police.' *Berkemer,* 104 S.Ct. at 3150." *Id.* at 961.

Since the Superior Court felt "compelled" to make a finding of custody based on the definition of custody in *Thibodeau,* we must vacate its order and remand so that the court may make the factual findings necessary in applying the standard articulated herein. On remand, the court should determine whether a reasonable person in Gardner's position would have believed he was "actually in police custody and being constrained to a degree associated with formal arrest." *Streifel,* 781 F.2d at 962. Because the parties at the time of the suppression hearing may not have appreciated the difference between the standard announced in *Thibodeau* and that of *Streifel,* on remand, if requested by either party, the court may take additional evidence.

The entry is:

---

**2.** Because the defendant at the suppression hearing did not raise the Maine Constitution and does not challenge the court's finding that his statements were voluntary, we decline to review the issue, raised for the first time on appeal, whether the statements should have been suppressed under article I, section 6 of the Maine Constitution. *See State v. Ellis,* 502 A.2d 1037, 1038 (Me.1985); *State v. Thornton,* 485 A.2d 952, 953 (Me.1984).

**3.** Among the objective factors to be considered are: 1) whether the suspect was questioned in familiar surroundings; 2) the number of law enforcement officers present; 3) the degree of physical restraint placed upon the suspect; and 4) the duration and character of the interrogation. *Streifel,* 781 F.2d at 961 n. 13 (citing 1 W. LaFave & J. Israel, *Criminal Procedure* § 6.6, at 494–99 (1984)).

Order vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.