STATE of Maine

v.

**Gordon R. PINKHAM.**

Supreme Judicial Court of Maine.

Argued May 9, 1986.

Decided May 28, 1986.

Janet T. Mills, Dist. Atty., Kevin J. Regan, Asst. Dist. Atty. (orally), Farmington, for plaintiff.

Stephen T. Hayes (orally), Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

After a jury trial in Superior Court (Franklin County) defendant Gordon R. Pinkham was convicted of Class B vehicular manslaughter, 17–A M.R.S.A. § 203 (Supp. 1985–1986). Prior to trial the Superior Court denied defendant's motions to suppress two sets of statements he had made to Farmington police officers. Defendant appeals, contending that both sets of statements were obtained in violation of his fifth and sixth amendment rights. We find no such violations and therefore affirm his conviction.

In the early evening on July 8, 1984, a head-on collision occurred on Route 4 in Farmington between defendant, driving south in an Oldsmobile, and Fred Simpson, Jr., traveling north on a motorcycle. The first police officer to arrive on the scene found Simpson dead and defendant standing beside his car, which was facing north in the ditch beside the northbound lane.

Defendant had bloodshot eyes and his breath smelled of alcohol. He was taken by ambulance to the Franklin Memorial Hospital. In the short period leading up to the accident several witnesses had seen defendant driving his Oldsmobile south on Route 4 at very fast speeds and in an erratic manner, swerving back and forth over the center line. He had crossed over into the northbound lane and hit Simpson. Defendant's speed at the time of impact with Simpson's motorcycle was estimated at about 87 miles per hour. Defendant was sentenced to the maximum 10 years of imprisonment.

## I. *The Hospital Statements*

Defendant made the first set of inculpatory statements at the hospital on the evening of the accident. When Officer Dennis Pike of the Farmington Police Department arrived in uniform at the hospital one hour after the accident, he found defendant on a gurney in a small room off the emergency room. Officer Pike was acquainted with defendant, and defendant appeared to be comforted by his presence. In fact, defendant held Pike's hand and asked him to remain with him for what turned out to be over two and a half hours. During the first twenty minutes of their conversation, defendant made various incriminatory statements. Pike then gave defendant his *Miranda* warnings. Defendant, after acknowledging that he understood all of his rights, waived his right to remain silent and his right to counsel and agreed to discuss the accident with Pike. Thereafter defendant repeated all the same incriminating statements that he had made previously. At trial the substance of those post-*Miranda* statements went into evidence through Officer Pike's testimony. On appeal defendant argues that his statements at the hospital should have been suppressed, contending that the belated *Miranda* warnings were not sufficient to cure the taint of the initial unwarned statements. He also argues that the suppression justice erred in finding that all of his

statements to Officer Pike were voluntarily made.[1]

A recent Supreme Court ruling disposes of defendant's argument. In *Oregon v. Elstad,* —— U.S. ——, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Court held that the initial failure of the police to give a suspect his *Miranda* warnings does not prevent that suspect from waiving his rights and confessing once he has been given those warnings. The Court stated:

When police ask questions of a suspect in custody without administering the required warnings, *Miranda* dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the State's case in chief.... The Court today in no way retreats from the bright line rule of *Miranda.* We do not imply that good faith excuses a failure to administer *Miranda* warnings; nor do we condone inherently coercive police tactics or methods offensive to due process that render the initial admission involuntary and undermine the suspect's will to invoke his rights once they are read to him. A handful of courts has, however, applied our precedents relating to confessions obtained under coercive circumstances to situations involving wholly voluntary admissions, requiring a passage of time or break in events before a second, fully warned statement can be deemed voluntary. Far from establishing a rigid rule, we direct courts to avoid one; *there is no warrant for presuming coercive effect where the suspect's initial inculpatory statement, though technically in violation of Miranda, was voluntary. The relevant inquiry is whether, in fact, the second statement was also voluntarily made.* As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements. The fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative. We find that the dictates of *Miranda* and the goals of the Fifth Amendment proscription against use of compelled testimony are fully satisfied in the circumstances of this case by barring use of the unwarned statement in the case in chief. No further purpose is served by imputing "taint" to subsequent statements obtained pursuant to a voluntary and knowing waiver. We hold today that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings.

*Elstad,* —— U.S. at ——, 105 S.Ct. at 1298, 84 L.Ed.2d at 237–38 (footnote omitted; emphasis added).

■ Thus, in the case at bar, the two-pronged question is whether defendant's initial statements to Officer Pike were voluntary, and if so, whether his post-*Miranda* statements were also voluntarily made. The suppression justice found as a fact that all of defendant's statements were voluntary, and that finding must stand unless clearly erroneous. *State v. Reeves,* 499 A.2d 130, 132 (Me. 1985).

■ The record fully supports the suppression justice's finding of voluntariness of defendant's statements: defendant was acquainted with Officer Pike, who at defendant's request stayed at his side holding his hand for over two and a half hours; defendant was capable of exercising his free will as is shown by the fact that defendant though uncooperative with medical personnel was very cooperative with Officer Pike; Pike gave defendant complete *Miranda* warnings and defendant stated that he understood his rights, yet still agreed to discuss the accident; and, finally,

---

**1.** On appeal defendant also attacks the suppression justice's finding that defendant was not in custody at the hospital and that accordingly *Miranda* warnings were not mandated. Since we hold that the hospital statements were admissible even if defendant was in custody, we need not reach that issue.

Pike, who was in uniform, did not use his acquaintanceship with defendant to trick a confession out of defendant. The evidence shows that defendant's statements both before and after the *Miranda* warnings were voluntary, and therefore, under *Elstad,* no violation of defendant's fifth or sixth amendment rights occurred. Defendant's post-*Miranda* statements were properly admitted in evidence.

## II. *The Statements on the Way to the Police Station*

Defendant made the second set of inculpatory statements two days later, after he had been released from the hospital and placed under arrest by two Farmington police officers, Richard Caton and Nolan Wilcox. Officer Caton had given defendant *Miranda* warnings in his hospital room on the day before, and at that time defendant had chosen to exercise his *Miranda* right to remain silent until he had gotten a lawyer. The officers did not repeat the *Miranda* warnings at the time of defendant's arrest. Both officers, however, were aware of defendant's choice to remain silent and did not talk with him as they started to drive from the hospital to the Farmington police station. A short time into the drive, however, defendant initiated a conversation about the nature of construction work taking place on the road on which they were traveling. Defendant then asked how "the family was taking it," apparently referring to the decedent's family. Officer Caton replied that he did not know, but that he had heard that there were eight children. Defendant then became disturbed and made several inculpatory statements about the accident that were used against him at trial. The officers did not question defendant about the accident at any time.

Defendant contends that those statements should have been suppressed on the ground that they were obtained in violation of his fifth and sixth amendment rights, which he had chosen to exercise when Officer Caton had given him the *Miranda*

warnings in the hospital on the day before his arrest. The only issue on appeal is whether defendant was interrogated by the officers in violation of his right under *Miranda* to remain silent until he had consulted with an attorney.

In *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Supreme Court concluded that the *Miranda* safeguards "come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Id.* at 300–01, 100 S.Ct. at 1689. The "functional equivalent" of interrogation refers to "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. at 1689. The Court emphasized that since the police "cannot be held accountable for the unforeseeable results of their words or actions," the definition of interrogation must be limited to words or actions by the police that they *"should have known* were reasonably likely to elicit an incriminating response." *Id.* at 301–02, 100 S.Ct. at 1689–90 (emphasis in original). *See also State v. Friel,* 508 A.2d 123, 127 (Me.1986).

■ Turning to the present case, the officers engaged in no express questioning whatever of defendant. The only issue is whether there existed the "functional equivalent" of interrogation. The suppression justice found as a fact that defendant's statements were not made as a result of words or actions that the officers should have known were reasonably likely to elicit such an incriminating response. He found that it was defendant who initiated the conversation, that there was no functional equivalent of interrogation under *Innis,* and that his statements were voluntary beyond a reasonable doubt. Those findings are fully justified on the evidence of record. Under the teachings of *Innis,* the Superior Court committed no error in admitting evidence of the statements defendant made on the way to the police station.

The entry is:

Judgment of conviction affirmed.

All concurring.