STATE of Maine

v.

**Edmund R. BRIDGES and
Horace W. Moore.**

Supreme Judicial Court of Maine.

Argued Jan. 8, 1986.
Decided Aug. 20, 1986.

James E. Tierney, Atty. Gen., Dennis J. Harnish (orally), Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for plaintiff.

Silsby & Silsby, Sandra Hylander Collier (orally), Ellsworth, for Bridges.

Libhart & Ferm, William N. Ferm (orally), Ellsworth, for Moore.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

Pursuant to 15 M.R.S.A. § 2115–A (1980 & Supp.1985) and M.R.Crim.P. 37B, the State appeals from the Order of the Superior Court (Washington County) granting motions of the Defendants, Horace W. Moore and Edmund R. Bridges, to suppress certain evidence obtained as the result of an aerial surveillance and certain oral statements made by Defendant Bridges.

The appeal of these motions to suppress arises from a "buy-bust" undercover operation in the Machias area culminating in the seizure of approximately one hundred pounds of "sea hash"[1] on July 21, 1983. While Maine State Trooper Patrick Lehan and Corporal Norman Auger, acting as undercover agents, arranged to ·purchase hashish from Nelson and Henry Geel, Sergeant Bradford Cochran observed with his naked eye the various parties' activities from an airplane flying at approximately 3500 to 4000 feet.

Sergeant Cochran observed Nelson Geel's green pickup being driven from his trailer home to a white farmhouse in Machiasport where Defendant Bridges was working. From there Cochran observed Defendant Bridges' yellow pickup, followed by Geel's green pickup, travel to the residence of Defendant Horace Moore, also in Machiasport. The green pickup pulled into Moore's yard and the yellow pickup parked adjacent to Route 92. While driving on Route 92 in his unmarked vehicle Corporal Auger was able to verify that Defendant Bridges drove his yellow pickup and Geel drove his green pickup. From the airplane, Cochran observed Geel and the two Defendants carry objects near one of Defendant Moore's out-buildings and load them into the back of the green pickup. Cochran could not identify the objects. Geel returned to the trailer home in his green

---

1. "Sea hash" refers to hashish allegedly dumped overboard by persons fleeing the Marine Patrol and dredged up by lobster and scallop fishermen or by others.

pickup where Trooper Lehan and Corporal Auger observed him bring three boxes of hashish into the trailer from the pickup. As the Geels were weighing the hashish in the trailer and renegotiating the price of the hashish with Lehan and Auger they were arrested by other officers who abruptly entered the trailer.

After the arrest other officers were dispatched to the Moore residence and Trooper MacMasters went to the white farmhouse where Defendant Bridges was working. Trooper MacMasters was followed a few minutes later by Sergeant Moody. After a heated discussion between Trooper MacMasters and Defendant Bridges a conversation ensued between Moody and Bridges wherein Bridges allegedly stated that he expected to receive $20,000 from the sale of the hashish. During the conversation Moody sat inside his unmarked station wagon while Defendant Bridges crouched or sat outside the vehicle. Bridges was neither under arrest nor physically restrained at the time of this conversation.

On September 8, 1983, Henry Geel, Nelson Geel, and the two Defendants whose appeal is before us were all indicted for unlawful trafficking in a Schedule X drug and conspiracy to commit unlawful trafficking in a Schedule X drug. Defendant Moore promptly moved to suppress testimony regarding the aerial surveillance and all things flowing therefrom. Defendant Bridges entered a similar motion and a motion to suppress the statements he allegedly made to Sergeant Moody. The State now appeals from the Superior Court's orders granting these several motions.

■ In *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the United States Supreme Court enunciated a two-part inquiry for determining whether a person has a constitutionally protected reasonable expectation of privacy: First, has the individual manifested a subjective expectation of privacy in the object of the challenged search; and second, is society willing to recognize that expectation as rea-

sonable? *Id.* at 351, 353, 88 S.Ct. at 512. In the present case, the Superior Court erred in concluding that the Defendants had manifested a subjective expectation of privacy in their outdoor activities and, thus, the Defendants fail to satisfy the first prong of the *Katz* test. We vacate the order suppressing the evidence obtained from the aerial surveillance.

■ Initially, we note that a person travelling in a vehicle on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another, *United States v. Knotts,* 460 U.S. 276, 281, 103 S.Ct. 1081, 1085, 75 L.Ed.2d 55 (1983). The only issue presented in this case, is whether the observations of the activities of the three men while they were on Defendant Moore's property violated a reasonable expectation of privacy. Although a warrantless search of the home or curtilage may violate the fourth amendment when undertaken by a physical entry onto the property, *see United States v. Van Dyke,* 643 F.2d 992, 993 (4th Cir.1981), generally observations of areas within the curtilage from ground locations outside the curtilage are permissible, absent measures taken by the occupant to prevent such observations. *United States v. Bassford,* 601 F.Supp. 1324, 1331 (E.D.Me.1985) *citing Fullbright v. United States,* 392 F.2d 432, 435 (10th Cir.1968); *State v. Peakes,* 440 A.2d 350, 352–53 (Me.1982).

■ The Defendants here took no measures to conceal their activities from observation, thus failing to manifest any subjective expectation of privacy. The testimony of three witnesses and several photographic exhibits confirm that Defendant Moore's yard, house, and outbuildings were plainly visible from Route 92, which passed by his house, and from three of his neighbors' yards as well. The activities observed from the air by Sergeant Cochran were thus also observable on the ground from outside the curtilage. Because the Defendants' activities occurred in open view of any number of possible observers, no ex-

pectation of privacy was manifested and we need go no further. It is immaterial that their activities happened to be observed from the air. We vacate the order suppressing the evidence obtained from the aerial surveillance. *Cf. California v. Ciraolo,* —— U.S. ——, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) (the United States Supreme Court held that the Fourth Amendment was not violated by the naked-eye aerial observation of a marijuana patch located within the curtilage of respondent's home and shielded from ordinary view by a fence).

 The State also appeals from the order suppressing certain statements made by Defendant Bridges to Sergeant Moody at the white farmhouse. In ordering the suppression of Bridges' statements at the white farmhouse the motion justice implicitly found that Bridges was in custody for *Miranda* purposes. However, an examination of the suppression order relating to certain statements made by Defendant Moore reveals that the motion justice applied incorrect criteria in determining whether the Defendants were in custody for *Miranda* purposes. The motion justice mistakenly thought the governing criterion was whether the defendant thought he was free to leave. The recent case of *United States v. Streifel,* 781 F.2d 953 (1st Cir. 1986) teaches that "a host of factors must be considered in order to determine whether the 'suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Id.* at 961 (citations omitted). *See also Maine v. Thibodeau,* —— U.S. ——, 106 S.Ct. 1799, 90 L.Ed.2d 343 (1986) (Burger, C.J., dissenting from denial of cert.), and *State v. Gardner,* 509 A.2d 1160 (Me.1986). Since the motion justice did not give appropriate consideration to these factors in making the *custody* determination we must remand for a proper determination of whether in light of *Streifel* the *Miranda* warning was required. If he concludes that a *Miranda* warning was not required, the motion justice must then address the question of voluntariness, a ques-

tion expressly reserved in his original decision.

The entry is:

Order suppressing evidence obtained from the aerial surveillance vacated and remanded for entry of an order denying motion to suppress.

Order suppressing Defendant Bridges' statement made on July 21, 1983, vacated and remanded for further proceedings consistent with the opinion herein.

All concurring.