STATE of Maine

v.

**Edmund R. BRIDGES.**

Supreme Judicial Court of Maine.

Argued May 7, 1987.
Decided Sept. 8, 1987.

James E. Tierney, Atty. Gen., Dennis J. Harnish (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Sandra Hylander Collier (orally), Silsby & Silsby, Ellsworth, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS,* WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

GLASSMAN, Justice.

The State of Maine appeals from an order of the Superior Court, Washington County, suppressing self-incriminating statements made to a police officer by the defendant Edmund R. Bridges for failure to warn Bridges as prescribed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The State contends the trial court erroneously determined Bridges was in custody at the time he made the statements. We hold the court reached a proper determination as to custody and affirm the order.

## I

This case comes before us for a second time on the State's appeal of pretrial rulings. The facts are set forth in detail in our earlier opinion[1] but may be summarized as follows: On July 21, 1983, a "buy-bust" undercover operation in the Machias area resulted in the seizure of approximately one hundred pounds of "sea hash."[2] While operating undercover, Maine State Trooper Patrick Lehan and Corporal Norman Auger arranged to buy hashish from Nelson Geel and Henry Geel. Sergeant Bradford Cochran observed the activities from an airplane and watched as Nelson Geel's truck traveled from his trailer to a white house where Bridges was working. From there, Bridges' truck and Geel's vehicle traveled to the residence of Horace Moore. Ground surveillance revealed that both Bridges and Geel drove their own vehicles. While at Moore's residence,

Bridges helped Geel and Moore load the hashish in Geel's truck. Bridges then returned to the white house.

Nelson Geel returned to his trailer with the hashish in order to complete the sale. He and Henry Geel were arrested as they weighed the hashish and negotiated its price. After those arrests, Officer Kenneth MacMaster went to the white house where Bridges was working and engaged him in a heated discussion. At this point Sergeant Ronald Moody arrived and interrupted MacMaster. Sergeant Moody and Bridges walked to the sergeant's unmarked car at the end of the driveway. The two conversed through the open door of the car while Sergeant Moody sat in the driver's seat and Bridges crouched outside of the vehicle. During the conversation, Bridges made the statements in question and told Moody that he expected to get $20,000 for his participation in the sale of the sea hash. Bridges was neither under formal arrest nor physically restrained when the statements were made.

Defendant's motion to suppress these statements was initially granted in late 1983. In the first appeal, we held that the Superior Court had used improper criteria in determining whether Bridges was in custody for *Miranda* purposes, and remanded the case to the Superior Court for its reconsideration in light of *United States v. Streifel*, 781 F.2d 953 (1st Cir.1986). On remand, the Superior Court again suppressed the statements and the State again appeals. 15 M.R.S.A. § 2115–A(4) and (5) (1986); M.R.Crim.P. 37B.

## II

The State contends on this appeal that in reaching a conclusion on the question of custody it was improper for the court to consider either the prior relationship between Officer MacMaster and Bridges or

---

* Roberts, J., sat at oral argument and participated in the initial conference, but did not participate in the final decision.

1. *State v. Bridges*, 513 A.2d 1365 (Me.1986).

2. "Sea hash" describes hashish allegedly thrown overboard by persons fleeing the Marine Patrol and later discovered by fishermen or others.

the police planning involved in the undercover operation.

On appeal the conclusions of the trial court will be sustained if, in accordance with the correct legal principles specifying the ultimate burden and cogency of proof, the evidence in the record provides rational support for the conclusions reached. *State v. Bleyl,* 435 A.2d 1349, 1358 (Me.1981). In reviewing the trial court's finding that *Miranda* warnings were required, we examine the evidence with due regard for the opportunity by the trial court to appraise the credibility of the testimony. *State v. Preston,* 411 A.2d 402, 405 (Me.1980).

In *State v. Gardner,* 509 A.2d 1160, 1163 (Me.1986), we adopted the criteria set forth in *Streifel* for determination of custody triggering the necessity for *Miranda* warnings. The court in *Streifel* listed several factors to be considered in the determination of custody. However, the court made clear that this list is not exclusive, stating that "a host of factors must be considered" in order to determine whether the freedom of a suspect was curtailed to a " 'degree associated with formal arrest.' " *United States v. Streifel,* 761 F.2d at 961 (quoted with approval in *State v. Bridges,* 513 A.2d at 1368).

It was not inappropriate for the Superior Court to consider Bridges' prior relationship with MacMaster. There was evidence that some months before the "buy-bust", MacMaster contacted Bridges several times in an attempt to persuade him to become an informant. Bridges alleged that MacMaster used abusive and threatening language to frighten him, including threatening to have Bridges arrested if he did not cooperate with the police in an ongoing investigation. However, no information was exchanged. When MacMaster approached Bridges following the "buy-bust", on July 21, MacMaster asked Bridges if he remembered him, threateningly referred to Bridges' failure to cooperate with the police, and again told Bridges that MacMaster was going to seize Bridges' truck and boat immediately.

The trial court also properly considered both the information the police gave Bridges when he was questioned and Bridges' own observations as to the officers' planning to effectuate successfully this "buy-bust" operation. Sergeant Moody told Bridges that the police 1) had seen Bridges' truck earlier that day en route to Horace Moore's residence, 2) had taken aerial photos of Bridges loading hashish into Nelson Geel's truck, and 3) had secured statements incriminating Bridges from three suspects. Moody confirmed that Bridges' truck was being seized by the police. At least three police officers in separate vehicles had arrived within minutes of each other at the farmhouse where Bridges was working. From the time of arrival of Officer MacMaster, Bridges was constantly in the company of one police officer.

In view of this evidence, the trial court's reference to the extensive planning of the police was not a reference to an "unarticulated plan" but to a police plan and its execution as communicated to Bridges by the police and as clearly evident to him by their conduct. *See Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984) ("policeman's unarticulated plan has no bearing" on the custody question); *State v. Bleyl,* 435 A.2d at 1349, 1358 (Me.1981) (a factor bearing on person's deprivation of freedom is "whether police attention has focused on him as a suspect.").

Based on this record, the trial court could properly conclude that a reasonable person in Bridges' position would have believed he was actually in police custody and constrained to a degree associated with a formal arrest rather than subject to a brief detention at the scene while the police sought to confirm or dispel their suspicions. *United States v. Streifel,* 781 F.2d at 962; *State v. Gardner,* 509 A.2d 1160, 1163 (Me.1986).

The entry is:

Order affirmed.

NICHOLS, SCOLNIK and CLIFFORD, JJ., concurring.

WATHEN, Justice, with whom McKU-SICK, Chief Justice, joins dissenting.

I must dissent. Following our earlier remand, the Superior Court once again found that defendant was in custody as he sat on the lawn and talked with Sergeant Moody through the open door of a police cruiser. This Court now concludes that an objective evaluation of those circumstances permits the finding that defendant was restrained in his freedom of movement to a degree associated with a formal arrest. The only two factors recited by the suppression justice in reaching his decision are the prior relationship between defendant and one of the officers, and the extensive planning involved in the undercover operation. I find no fault with the consideration of the first factor, but such a factor alone does not support the finding of custody. In my judgment the second factor, extensive planning on the part of the police, should not have been considered as part of an objective evaluation.

In *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Supreme Court dealt with the issue of the subjective intent of the police in the following terms:

> Although Trooper Williams apparently decided as soon as respondent stepped out of his car that respondent would be taken into custody and charged with a traffic offense, Williams never communicated his intention to respondent. A policeman's unarticulated plan has no bearing on the question whether the suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.

*Id.*, at 442, 104 S.Ct. at 3151.

Although recognizing the content of the language set forth in *Berkemer*, this Court avoids its force by concluding that the Superior Court relied on "a police plan and its execution as communicated to Bridges by the police and as clearly evident to him by their conduct." If such an interpretation of the findings were accurate, I would agree with the Court's conclusion. Unfortunately, however, such an interpretation has never been argued by either party and more importantly, it finds no support in the terms of the suppression order. The following findings and conclusions were made by the Superior Court:

> In addition, the Court has considered the entire testimony of the law enforcement officers who testified at the hearing with regard to the extensive planning which went into the undercover operation which culminated in the arrest of defendant Bridges and others on July 21, 1983. This factor is particularly important in this case in making a determination as to whether or not defendant Bridges was actually in custody at the time the statements were made, since the extensive planning and preparation required would certainly have a bearing on whether, once the defendant was apprehended, he would have been taken into custody, whether or not he was immediately arrested.

It is unmistakable that the Superior Court focused upon the testimony of the police officers concerning their plans, rather than the reasonable perception of the events unfolding before the defendant. The Court erroneously considered the subjective intent and unarticulated plans of the police officers in making the custody determination. I would vacate the order of suppression.