STATE of Maine

v.

**Patrick JALBERT.**

Supreme Judicial Court of Maine.

Argued Jan. 12, 1988.
Decided Feb. 12, 1988.

John D. McElwee (orally), Dist. Atty., Caribou, for State.

Jonathan W. Sprague (orally), Stevens, Engels, Bishop & Sprague, Presque Isle, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and CLIFFORD, JJ.

CLIFFORD, Justice.

The defendant, Patrick Jalbert, was charged with obtaining cash benefits from the Social Security Administration on behalf of his son and intentionally or recklessly failing to make required payments to the Bangor Mental Health Institute on the son's behalf, and he appeals his conviction of theft by misapplication of property, 17–A M.R.S.A. § 358 (Class B) (1983), entered by the Superior Court, Aroostook County, following a jury trial.

Jalbert contends on appeal that the trial court erred in failing to suppress incrimina-

ting statements he made to investigators and in admitting in evidence certain letters he previously wrote to the Social Security Administration. We affirm the judgment.

## I.

Prior to trial, Jalbert moved to suppress certain incriminating statements he made during an interview in his home conducted by two detectives from the Attorney General's office, contending that the statements resulted from a custodial interrogation and that no *Miranda* warnings were given him by the detectives. The motion justice found that Jalbert was not in custody at the time of his questioning and denied the motion.

The fifth amendment to the United States Constitution requires that a person undergoing custodial interrogation be advised of his rights as set out in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) if statements made during such custodial interrogation are to be used against him. Although Jalbert was interrogated during the interview, the motion justice's finding that he was not in custody will be sustained if rationally supported by the evidence. *State v. Bridges,* 530 A.2d 718, 720 (Me.1987).

■■■ The State carries the burden of demonstrating by a preponderance of the evidence that a person is not in custody. A person is in custody for fifth amendment purposes if a reasonable person in his position would have believed he was " 'actually in police custody and being constrained to a degree associated with formal arrest.' " *State v. Gardner,* 509 A.2d 1160, 1163 (Me. 1986), quoting *United States v. Streifel,* 781 F.2d 953, 962 (1st Cir.1986).

The evidence here clearly supports the motion justice's finding that Jalbert was not in custody. The interview took place in Jalbert's home, was conducted by two plainclothes detectives whom Jalbert invited in. No restraints were placed on him. Although Jalbert testified that he did not feel free to leave, the motion justice was free to reject that bald assertion.

## II.

At trial, Israel Eli Sturm, a clinical psychologist, testified as a defense witness that Jalbert suffered from post traumatic disorder and that that condition severely impaired his mental and emotional capacity to handle financial matters. This evidence was offered on the issue of the requisite state of mind of Jalbert. That night, at the request of the prosecutor, representatives of the Social Security Administration who were present at the trial examined the Social Security file in this case and discovered several letters written by Jalbert to the Social Security Administration during 1978, 1979 and as late as August 1980, showing Jalbert to have a clear understanding of the Social Security benefit system and procedures. The next morning at trial, the prosecutor notified defense counsel of the existence of the letters and sought permission from the court to use them in his cross-examination of Jalbert to rebut the testimony of Dr. Sturm by demonstrating Jalbert's mental acuity during the 1978–80 period. Jalbert objected, claiming that the letters should have been excluded because they were not furnished to defendant prior to trial pursuant to the automatic discovery provisions of M.R.Crim.P. 16(a), and that they were irrelevant in any event, since they were not written during the time the theft was alleged to have occurred.[1]

Jalbert argues that the State should have been precluded from using the letters as a sanction for failing to provide them to him as automatic discovery under M.R.Crim.P. 16(a), and contends that he was prejudiced by their use because Dr. Sturm, who had testified the previous day, was no longer available to testify as to the consistency of the coherent letters with the post traumatic disorder.

Relevant parts of Rule 16(a) provide as follows:

(1) The attorney for the State shall furnish to the defendant within a reasonable time:

(A) A statement describing any testimony or other evidence intended to be used against the defendant which:

1. The indictment charged that the theft oc-

curred between April 1980 and June 1983.

....

(ii) Resulted from any confession, admission or statement made by the defendant.

(B) Any written or recorded statements and the substance of any oral statements made by the defendant.

■ The duty on the State to disclose this information is a continuing one. M.R. Crim.P. 16(a)(2). However, the duty of the State to provide discovery is not absolute. The State's duty is one of reasonable diligence, of making reasonable inquiry to uncover material relevant to the case against the defendant. *See State v. Dowling*, 453 A.2d 496, 499–500 (Me.1982); *see also State v. Simmons*, 435 A.2d 1090, 1093 (Me.1981). The State is not required to perform investigatory work for the defendant, *State v. Morton*, 397 A.2d 171, 176 (Me.1979), nor to locate and make available to the defendant all material about the defendant regardless of its relevancy to the case or likelihood of its use at a trial or pretrial proceeding. *See State v. Flemming*, 409 A.2d 220, 223 (Me. 1979).

Prior to Dr. Sturm's testimony calling into question Jalbert's mental capacity, the letters would have been irrelevant and of no use to either the State or Jalbert, and the State had no reason to make inquiry about them. At the conclusion of Dr. Sturm's testimony at the end of the first day of trial, the State did inquire of the Social Security Administration as to any material relevant to Jalbert's mental capacity to handle financial matters. The State notified Jalbert of the existence of the letters when the court convened the following morning. The Superior Court did not err in finding that the State violated no duty to disclose. Even if a violation had occurred, there was no prejudice to Jalbert resulting from the use of the letters since Dr. Sturm was questioned extensively on the consistency of the post traumatic syndrome affecting Jalbert's ability to understand finances with Jalbert's apparently competent handling of his own financial and personal affairs, and those of his son.

The trial court's ruling that the letters were relevant and his decision to allow the State to admit them in evidence was a discretionary determination and will not be overturned absent an abuse of that discretion. *State v. Littlefield*, 408 A.2d 695, 697 (Me.1979). Here there was no abuse of discretion. The letters were written during a period immediately preceding, and to some extent coincident with, the alleged crime, and were probative on Jalbert's mental capacity, an issue clearly placed in issue by the defendant's expert witness. Moreover, Jalbert's claim that the letters were unfairly prejudicial and should have been excluded under the provisions of M.R.Evid. 403 is without merit.

The entry is:

Judgment affirmed.

All concurring.