STATE of Maine

v.

Allen W. HEWES.

Supreme Judicial Court of Maine.

Argued March 20, 1989.
Decided April 27, 1989.

James E. Tierney, Atty. Gen., Wayne S. Moss (orally), Jeffrey L. Hjelm, Asst. Attys. Gen., Augusta, for State.

Edward E. Russell (orally), Russell, Lingley & Silver, Bangor, for defendant.

Before McKUSICK, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

The State of Maine, pursuant to 15 M.R.S.A. § 2115–A (1980 & Supp.1988) and M.R.Crim.P. 37B, appeals from an order of the Superior Court (Penobscot County; *Chandler, J.*) suppressing certain statements made by the defendant, Allen W. Hewes, to a Bangor Police Department detective on October 24, 25 and 27, 1986.  Because we

uphold the court's determination that Hewes was in custody while at the Bangor Police Station on October 24 and 25, we affirm that portion of the order suppressing the statements made on October 24 and 25 before the *Miranda*[1] warnings were read to him. We vacate the suppression of the post-*Miranda* statements of October 25 and 27, however, and remand for the court to determine their admissibility pursuant to the principles set out in *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

On October 24, 1986, Merrill Cross was killed by a single blast from a shotgun at a boarding house on Hammond Street in Bangor. Hewes was a resident of the boarding house and a close friend of the victim. A Penobscot County grand jury later indicted Hewes for manslaughter, 17–A M.R.S.A. § 203(1)(A) (1983), and possession of a firearm by a felon, 15 M.R.S.A. § 393 (1980). Hewes filed a pretrial motion to suppress various statements that he made to the police on October 24, 25 and 27, 1986. The following evidence, viewed in the light most favorable to the defendant, was presented at the suppression hearing.

On the morning of October 24, 1986, police officers of the Bangor Police Department arrived at the boarding house in response to a report that an individual, later identified as Merrill Cross, had been killed. The first officer at the scene asked Hewes, "What happened?" Hewes responded, "I didn't know the gun was loaded," and that his friend was dead. Later, in the presence of a police lieutenant, Hewes spontaneously remarked that the shooting was an accident, caused by the way the gun was "rigged."[2]

Hewes and two female companions were instructed to accompany Detective Roy McKinney to the Bangor Police Station in the rear of an unmarked police cruiser. Detective McKinney interrogated Hewes at the police station for fifty minutes in a small interrogation room. The recorded interview was not preceded by *Miranda* warnings. During the interview, the detective repeatedly asked Hewes to describe the circumstances surrounding the death of Mr. Cross. Hewes said he believed the shotgun was not loaded and that the gun inexplicably discharged when he reached for it as it slipped from underneath his arm. Following a thirty-minute interlude, Detective McKinney questioned Hewes again for a few minutes and arranged to have a police officer drive him home.

On October 25, 1986, Detective McKinney called Hewes and arranged to pick him up at a trailer park in Bangor. The detective later drove Hewes to the police station, and, once again, questioned him in the interrogation room. The detective, based on his investigation, had reason to believe that the shotgun could not have discharged in the manner described by Hewes. Although Detective McKinney testified that he advised Hewes that he could terminate the interview and leave at any time, the interview was not preceded by *Miranda* warnings. The detective was concerned that Hewes would be less likely to make an inculpatory statement if advised of his rights.

Detective McKinney asked Hewes to describe how the shotgun had discharged. Hewes said that the "action" (the mechanism by which the weapon is loaded and fired) of the shotgun was open and adhered to his prior claim that the gun discharged after slipping from underneath his arm. The detective expressed disbelief and explained that he had "thoroughly" examined the gun and that it could discharge only when the "action" was closed. After Hewes insisted that the shooting was an accident and began crying, Detective McKinney said that he believed the shooting was not "intentional," but wanted Hewes to tell the "truth." When Hewes remained with his initial story, the detective accused him of "fooling around" when Cross was killed:

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Hewes does not challenge by cross-appeal the denial of his motion to suppress these statements.

I think it is very conceivable that you ... jokingly ... pointed the gun at [Cross], not knowing there was a round in there ... and you touched the trigger, and it surprised ... you that it went off. Isn't that the way it happened[?] You'll feel a lot better, Allen.

Hewes responded, "That's just the way it happened. It was an accident. I didn't know it was in there." For the first time, Detective McKinney gave Hewes the *Miranda* warnings. Hewes thereafter provided a detailed description of the shooting and, once again, admitted pulling the trigger of the shotgun. When Hewes asked if he could return home, the detective said that he would check with his superior. Hewes was later advised that, in lieu of a formal arrest, he was to "check in" with the detective on a daily basis. Forty-five minutes after the interview began, the detective drove Hewes back to the trailer park.

On October 27, 1986, Hewes, apparently believing he was required to do so, appeared at the police station. Detective McKinney questioned him in the interrogation room about the shooting. Hewes indicated that he had used his right hand to pull the trigger of the shotgun. No *Miranda* warnings were given during the ten-minute interview. When the interview was over, Hewes walked out of the police station.

The court found that Hewes reasonably believed he was not free to leave the police station and that he was subjected to custodial interrogation during the interviews on October 24 and 25.[3] The court concluded that his statements on the 24th and the pre-*Miranda* statements on the 25th were inadmissible in the State's case-in-chief because they were not preceded by *Miranda* warnings.

The court also suppressed the post-*Miranda* statements that Hewes made on October 25, 1986 because the *Miranda* warnings "came much too late" and were issued after Hewes had already let the "cat ... out of the bag." The court concluded that once Hewes made an incriminating pre-*Miranda* admission, he "could find no legitimate reason not to continue the conversation" with the detective. The court also suppressed the statements made by Hewes on October 27 for the same reasons that Hewes' October 25 post-*Miranda* statements were suppressed. The court, having concluded that the *Miranda* warnings given on October 25 were "too late," expressly declined addressing whether Hewes had waived his *Miranda* rights during the October 25 interview.

## I.

The State argues that *Miranda* warnings were not required on October 24, or on October 25 prior to the time they were given, because up to that time Hewes was not in custody.[4]

Whether *Miranda* is applicable and requires the suppression of statements is a matter of federal constitutional law. *State v. Gardner*, 509 A.2d 1160, 1163 (Me. 1986). The Fifth Amendment to the United States Constitution requires that a person in custody and subject to interrogation must be advised of the rights referred to in *Miranda* in order for his statements to be admissible against him at trial. *State v. Jalbert*, 537 A.2d 593, 594 (Me.1988). On a motion to suppress, the State has the burden of proof to demonstrate by a preponderance of the evidence that a suspect was either not in custody, *id.*, or not under interrogation.[5] The court's conclusion that a suspect was in custody will be sustained if the evidence in the record provides rational support for the conclusion reached.

3. The State argues that Hewes was not in custody while at the police station on October 27. The court made no explicit finding as to custody on October 27 but suppressed the statements made on that day.

4. Hewes was told just prior to his being given the *Miranda* warnings on October 25 that he

could not leave, and the State concedes that he was in custody during the remainder of the interrogation on the 25th.

5. There is no dispute that Hewes was being interrogated when he made the statements subject to the suppression order.

*State v. Bridges*, 530 A.2d 718, 720 (Me. 1987). Because the State has the burden of proof, in order to prevail on appeal, the State must demonstrate that the court was *compelled* to find that the suspect was not in custody. *See Parkinson v. State*, 558 A.2d 361, 363 (Me.1989); *State v. Kneeland*, 552 A.2d 4, 6 (Me.1988).

■ A suspect is, as a general rule, in custody when he is taken into police custody or otherwise deprived of his freedom in any significant way. *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. In *Gardner*, 509 A.2d at 1163, and *Bridges*, 530 A.2d at 720, we adopted the criteria set forth in *United States v. Streifel*, 781 F.2d 953, 960–61 (1st Cir.1986), used to determine whether a suspect was in custody and subject to interrogation. The court in *Streifel* concluded that the suppression court "should inquire whether and when a person in [the suspect's] position would have believed that he was actually in police custody and being constrained to a degree associated with formal arrest." 781 F.2d at 962. *See Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). The court thus must ascertain whether a *"reasonable person in [the suspect's] position"* would have believed that he was in police custody. *Gardner*, 509 A.2d at 1163 (emphasis added).

■ Contrary to the State's contention, the court considered all of the circumstances of the interrogation in finding that Hewes was in custody, and did not rely solely on the fact that the questioning occurred at the Bangor Police Station. On both the 24th and 25th, Hewes was driven to the police station in a police cruiser, was questioned by police officers for a considerable period of time and was asked for detailed and specific information about the death of Mr. Cross. *See Streifel*, 781 F.2d at 961 n. 13. *See also Gardner*, 509 A.2d at 1163 n. 3 (listing factors to be considered when deciding if person is in custody).

**6.** The fact that there was testimony at the suppression hearing that prior to the interrogation on October 25 the interrogating officer told

■ Nor was it improper, as the State contends, for the court to consider Hewes' state of mind in determining whether he reasonably believed he was constrained to a degree associated with formal arrest. *Streifel*, 781 F.2d at 962. The court can consider, as it did here, the suspect's awareness of the State's knowledge of circumstances tending to incriminate the suspect in the commission of the crime so long as the reasonableness of the belief that one is in custody is measured against that of a reasonable person innocent of any crime. *State v. Bleyl*, 435 A.2d 1349, 1358 (Me. 1981).

■ There is rational support in the record for the finding that Hewes was subjected to custodial interrogation on October 24, and during the pre-*Miranda* portion of the interview on the 25th. The court was not compelled to find otherwise.[6] *Kneeland*, 552 A.2d at 6. Because Hewes' statements during those times were not preceded by *Miranda* warnings, they were properly suppressed.

## II.

During the October 25 interview, after Hewes admitted that he had pulled the trigger of the shotgun, Detective McKinney advised Hewes of his *Miranda* rights for the first time. Hewes thereafter repeated and amplified his pre-*Miranda* statements. The October 27 interview was not preceded by renewed *Miranda* warnings. The court granted Hewes' motion to suppress all of the post-*Miranda* statements.

■ We agree with the State's contention that the court applied the wrong standard in suppressing the statements and that the suppression order must be vacated. We disagree with the State, however, that the only issue remaining for the court to determine upon remand is whether Hewes knowingly, intelligently and voluntarily waived his *Miranda* rights on October 25.

Hewes that he could terminate the interview and leave at any time does not compel a finding that Hewes was not in custody.

In *State v. Philbrick*, 436 A.2d 844, 852 (Me.1981), we held that *Miranda* warnings are not, as a general rule, sufficient to cure the taint of an initial unwarned statement because an inculpatory statement obtained in violation of a suspect's *Miranda* rights taints a subsequent post-*Miranda* confession:

> Having let the cat out of the bag by making inadmissible statements in a custodial interrogation context, an accused's subsequent statements, even if made under proper *Miranda* warnings, must be viewed as given under the psychological pressures of having already made those incriminating statements and must be considered as the fruit of the first unlawful interrogation....

436 A.2d at 852.

In suppressing Hewes' post-*Miranda* statements, the court concluded that the *Miranda* warnings given after Hewes had made an incriminating statement "availed nothing. 'The cat was out of the bag....'" It is apparent that the court relied on the presumption of taint expressed in *Philbrick*.

Subsequent to *Philbrick*, the United States Supreme Court rejected the presumption that an inadmissible pre-*Miranda* confession causes a suspect to confess again following the giving of *Miranda* warnings. In *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the United States Supreme Court noted the "vast difference between the direct consequences flowing from coercion of a confession by physical violence or other deliberate means calculated to break the suspect's will and the uncertain consequences of disclosure of a 'guilty secret' freely given in response to an unwarned but noncoercive question, ..." 470 U.S. at 312, 105 S.Ct. at 1294, and said:

> [A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda*

warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.

470 U.S. at 314, 105 S.Ct. at 1296. In *State v. Pinkham*, 510 A.2d 520, 522–23 (Me. 1986), decided following *Elstad*, we applied *Elstad* and implicitly rejected the reasoning of *Philbrick*. *Pinkham* established that a defendant's post-*Miranda* statements are admissible if his initial pre-*Miranda* statements were voluntarily made, if he knowingly and intelligently waived his rights under *Miranda*, and if his post-*Miranda* statements were also voluntarily made. 510 A.2d at 522.

In determining the admissibility of post-*Miranda* statements when those statements have been preceded by unwarned statements, a trial court has to address several separate, although interrelated, issues. The court has to review the circumstances of the *Miranda* warnings and decide if the State has demonstrated by a preponderance of the evidence that the *Miranda* rights were properly read to the suspect and whether the suspect knowingly, intelligently and voluntarily waived those rights. *United States v. Olsen*, 609 F.Supp. 1154, 1160–61 (D.C.Me.1985); *State v. DeLong*, 505 A.2d 803, 808 (Me. 1986). The court also has to determine whether the initial unwarned, and thus inadmissible, statements were voluntary, and should address, among other factors, whether "coercive or improper tactics" were used in obtaining them. *Elstad*, 470 U.S. at 314, 105 S.Ct. at 1296. That review is made, however, free from any presumption of coercive effect arising from the fact that the statements were unwarned. *Id.* at 318, 105 S.Ct. at 1297–98. If the court determines that no coercive or other improper police tactics were used to procure the pre-*Miranda* statements, that they were voluntary, and that the *Miranda* rights were waived, the court must also decide whether the post-*Miranda* statements were voluntary.[7] In its analysis, the

---

7. The federal standard as to both the waiver of *Miranda* rights and the voluntariness of state-

ments pre- and post-*Miranda*, is proof by a preponderance of the evidence. *Lego v. Twomey*,

court should "examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements." *Elstad,* 470 U.S. at 318, 105 S.Ct. at 1297–98.

It is clear that the court in this case did not determine whether Hewes knowingly, intelligently and voluntarily waived his rights under *Miranda.* The court must make that determination on remand. The State maintains, however, that the court did make the determinations of voluntariness as to both the pre-*Miranda* and post-*Miranda* statements required under *Elstad* and *Pinkham* when it found that all of Hewes' statements were voluntary and uncoerced. We disagree. From its failure to use the analysis required in *Elstad* and *Pinkham,*[8] and its use of "the cat out of the bag" language of *Philbrick,* it is evident that the court in deciding the motion to suppress erroneously relied on *Philbrick* and applied the presumption that Hewes' post-*Miranda* statements were tainted because they were preceded by unwarned statements. The finding of voluntariness made by the court was made for the sole purpose of deciding whether Hewes' statements that the court had previously ordered suppressed could be used by the State for purposes of impeachment. *See Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). *See also State v. Durepo,* 472 A.2d 919, 922–23 (Me.1984). Upon remand the court should make the determinations required under *Elstad* and *Pinkham,* considering, among other factors, whether there was improper police conduct, fully aware of the rule enunciated in those cases, and for the purpose of determining admissibility of the statements in the State's case-in-chief.

In addition to considering the admissibility of the post-*Miranda* statements of October 25 under the principles of *Elstad* and

*Pinkham,* the court has to decide under those same principles whether to suppress the statements made by Hewes on October 27. In doing so, the court should determine whether Hewes was in custody on October 27; whether he waived his *Miranda* rights on October 25 (a determination that has to be made in deciding the admissibility of the post-*Miranda* statements on the 25th); and whether the statements on the 27th are admissible in the absence of renewed *Miranda* warnings. *See State v. Birmingham,* 527 A.2d 759, 761–62 (Me.1987).

The entry is:

Order of suppression affirmed in part and vacated in part. Remanded for further proceedings consistent with the opinion herein.

All concurring.

---

404 U.S. 477, 489, 92 S.Ct. 619, 626–27, 30 L.Ed. 2d 618 (1972). In Maine, under Me. Const. art. I, § 6, the state is required to demonstrate the voluntariness of any statement beyond a reasonable doubt. *State v. Snow,* 513 A.2d 274, 276 (Me.1986); *State v. Knights,* 482 A.2d 436, 440 (Me.1984); *State v. Collins,* 297 A.2d 620, 627 (Me.1972).

8. At the hearing on the motion to suppress, neither party cited *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). *State v. Pinkham,* 510 A.2d 520 (Me.1986), was cited, but not on the issue of admissibility of the post-*Miranda* statements.