**STATE of Maine**

v.

**Joseph Arthur LAGASSE.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 8, 1990.

Decided May 30, 1990.

Craig E. Turner, Deputy Dist. Atty., Auburn, for State.

Robert M. Napolitano, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN and CLIFFORD, JJ.

WATHEN, Justice.

Defendant Joseph Arthur Lagasse appeals his conviction of two counts of unlawful sexual contact, 17–A M.R.S.A. § 255(1)(C) (Supp.1989), and one count of gross sexual misconduct, *Id.* § 253 (Supp. 1989), following a jury trial in the Superior Court (Androscoggin County, *Bradford, J.*). On appeal, defendant argues that the motion justice committed reversible error by denying his motion to suppress certain statements made by him to the Maine State Police during their investigation of the case. Defendant further contends that the trial justice abused his discretion by denying his motion for a mistrial based on the victim's testimony regarding defendant's willingness to undergo a polygraph examination.

Defendant was convicted of sexually abusing a 12–year–old female student while employed as a public school music teacher in Sabattus. The State's case was based on the testimony of the victim, now 19, and Detective Richard Phillips of the Maine State Police. Prior to trial, Defendant moved to suppress the entire contents of a December, 1988 interview conducted by Det. Phillips at the Bangor Police station. Defendant argued that the statements were obtained in violation of his rights under the fifth amendment to the United States Constitution.

At the suppression hearing, Det. Phillips testified that when he contacted defendant by telephone to set up the interview he explained that they would be discussing a young lady's allegations that defendant abused her. The transcript of the inter-

view reveals that Det. Phillips immediately notified defendant that he was a suspect, that shortly after the interview began Det. Phillips read defendant his *Miranda* warnings, and that Det. Phillips informed defendant that the door was unlocked and that defendant could leave at any time. The court denied defendant's motion.

At trial, the following colloquy took place between defendant's counsel and the victim during cross-examination:

Q You don't know if they investigated? I'll ask you again. You're under oath. Do you know from any source of knowledge if this was investigated by the Department of Human Services and found to have no value or no validity? Do you know that?

A The investigation was for [parental] negligence. That was what the police report was made out for and—

Q There was an investigation—

THE COURT: Just a moment.

A And in the process of that they stumbled on letters that could mean incriminating—

Q And what happened?

A The officer wrote in the report I asked Mr. Lagasse, he denied it. He said he would be willing to take a lie detector test and that was essentially what he said.

Defendant immediately moved for a mistrial, but the trial justice denied the motion.

Defendant now appeals both rulings.

### I.

The fifth amendment to the United States Constitution requires that a person in custody and subject to interrogation must be given *Miranda* warnings in order for his statements to be admissible against him at trial. *State v. Hewes*, 558 A.2d 696,

698 (Me.1989). In denying defendant's motion to suppress, the court specifically found that: 1) defendant was not in custody at the time he was questioned by Det. Phillips; and 2) Det. Phillips fully and completely read defendant his *Miranda* warnings and defendant knowingly and voluntarily waived his right to remain silent.

■ The State bears the burden of demonstrating by a preponderance of the evidence that a person is not in custody. *State v. Jalbert*, 537 A.2d 593, 594 (Me. 1988). In *State v. Gardner*, 509 A.2d 1160 (Me.1986), we adopted the First Circuit's test for determining when a defendant is in custody for fifth amendment purposes, namely, "whether a reasonable person in [defendant's] position would have believed he was 'actually in police custody and being constrained to a degree associated with formal arrest.'" *Id.* at 1163, quoting *United States v. Streifel*, 781 F.2d 953, 962 (1st Cir.1986).

■ The evidence clearly supports the motion justice's finding that defendant was not in custody. Defendant voluntarily went to the police station, the interview having been arranged by appointment at a mutually convenient time. Defendant was interviewed by Det. Phillips alone, in the absence of any circumstances suggesting coercion. Although the interview lasted over two hours, it was conducted in an unlocked room. Finally, before defendant made any incriminating statements Det. Phillips advised him that the door was unlocked and that he could leave at any time.[1] *See Gardner*, 509 A.2d at 1163 n. 3 (listing relevant factors for determining custody); *Jalbert*, 537 A.2d at 594. *See also* 1 W. LaFave & J. Israel, *Criminal Procedure* § 6.6 at 494–99 (1984 & Supp.1990).

---

1. The transcript of the interview shows that at the time Det. Phillips advised defendant that he was free to leave he also read defendant his *Miranda* warnings. This appears on page 3 of the 121–page document. The first three pages contain no incriminating statements; they establish only that defendant was the victim's music teacher at the time of the alleged incidents and that he remembered her. The Superior Court committed no error in holding in the alternative that Det. Phillips fully and completely read defendant his *Miranda* warnings and that defendant knowingly and voluntarily waived his right to remain silent. Contrary to defendant's assertion, this is not a situation where defendant "let the cat out of the bag." *State v. Philbrick*, 436 A.2d 844, 852 (Me.1981). *See also Hewes*, 558 A.2d at 700; *Oregon v. Elstad*, 470 U.S. 298, 312–14, 105 S.Ct. 1285, 1294–96, 84 L.Ed.2d 222 (1985).

**1226**

## II.

Defendant next argues that the victim's inadvertent mention of defendant's willingness to take a polygraph examination at the time of an earlier Department of Human Services investigation was grounds for a mistrial. In *State v. Harnish*, 560 A.2d 5 (Me.1989), we explained "that if the reference to a polygraph is inadvertent, 'there is cause for a mistrial if, but only if, the reference to the test raises an inference about the result that substantially prejudices the defendant's case.'" *Id.* at 8 (citations omitted). Here, there is no reasonable possibility that defendant was prejudiced. There was no reference to test results or unwillingness to take a polygraph; on the contrary, the testimony was that defendant was willing to take one. Moreover, unlike *Harnish*, the testimony in this case was elicited by defendant's own counsel. Finally, any prejudice to defendant's case could easily have been remedied by a curative instruction, for which defendant failed to move. *See State v. Mason*, 528 A.2d 1259, 1260 (Me.1987) ("The trial court should deny a motion for mistrial except in the rare case when the trial cannot proceed to a fair result and no remedy short of a new trial will satisfy the interests of justice.").

The entry is:

Judgment affirmed.

All concurring.