1144

No. 85–744. MAINE *v.* THIBODEAU. Sup. Jud. Ct. Me. Motion of respondent for leave to proceed *in forma pauperis* granted. Certiorari denied.

CHIEF JUSTICE BURGER, dissenting.

John Tower's brother reported him missing on October 27, 1983; his mother told police that he had last been seen taking respondent Jay Thibodeau for a test drive in his car that he had for sale. On the morning of October 28, police officers went to the Thibodeau apartment where they spoke with respondent in the presence of his parents for about 10 minutes. Respondent told police that he and Tower had gone for a test drive the previous day, after which Tower dropped him off at home.

Two police officers returned to the Thibodeau household that afternoon and asked respondent to show them the route he and Tower had taken the day before. Respondent agreed and got into the backseat of the police car, a two-door automobile. For about an hour and a half the three retraced the complicated route respondent described to the police, after which respondent was returned home. At no time did respondent ask to leave the car. At one point in the journey respondent asked if he was a suspect. The police stated that he had been the last person seen with the victim, to which respondent replied, "Well, I guess I am."

Two days later police found John Tower's body, shot in the head with a .22-caliber rifle. The next day, police discovered that respondent had traded in his .22-caliber rifle for another gun. Police arrested respondent on November 1. After waving his *Miranda* rights, respondent confessed to the killing.

At trial respondent moved to suppress his statements to the police on the morning and afternoon of October 28 on the ground that he was subjected to custodial interrogations without the necessary *Miranda* warnings. The trial court denied the motion, finding that the statements were "voluntary beyond a reasonable doubt" and that "the circumstances did not constitute custodial interrogation" because respondent had willingly cooperated with the police in generally noncoercive settings.

The Maine Supreme Judicial Court, three justices dissenting, reversed respondent's murder conviction on the ground that the afternoon session with police constituted a custodial interrogation requiring *Miranda* warnings. 496 A. 2d 635 (1985). The court listed the following criteria for determining whether there had

been a custodial interrogation: (1) the locale where the statements were made; (2) the party initiating the contact; (3) the existence or nonexistence of probable cause to arrest; (4) the subjective intent of the police; (5) the subjective belief of the defendant; and (6) the focus of the investigation. Applying these factors to this case, the court noted that the officers' suspicions had "increased dramatically since the morning" and that, although no crime had yet been detected, respondent "was the *only* suspect." *Id.*, at 639. Furthermore, a reasonable person would have felt, as did respondent, that he had no choice but to accompany the officers. Finally, by placing him in the backseat of a two-door automobile, police had deprived him of his freedom in a significant way.

This decision of the Maine Supreme Judicial Court illustrates an acute need for clarification of the proper factors to be considered in making the "in custody" determination—a clarification perhaps made necessary by our own lack of clarity as to the standards to be applied. However, four of the six factors enumerated by the Maine court have been rejected by either this Court or other state and federal courts.

(1) We plainly rejected the relevancy of the "subjective intent of the police" in *Berkemer* v. *McCarty*, 468 U. S. 420, 442 (1984), where we stated "[a] policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time."

(2) In *Beckwith* v. *United States*, 425 U. S. 341 (1976), we held that whether police suspicion had focused upon the defendant has no bearing whatever on the "in custody" determination: "'It was the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was conducted, which led the Court to impose the *Miranda* requirements with regard to custodial questioning.'" *Id.*, at 346–347 (quoting *United States* v. *Caiello*, 420 F. 2d 471, 473 (CA2 1969)). See also *People* v. *Black*, 698 P. 2d 766 (Colo. 1984) (trial court erred in suppressing evidence by considering whether the police's investigation had "focused" on the defendant). Cf. *Green* v. *Superior Court*, 40 Cal. 3d 126, 707 P. 2d 248 (1985) (lack of police suspicion dispositive).

(3) The Ninth Circuit has held that the existence of probable cause at the time of the interrogation is similarly irrelevant. See *United States* v. *Woods*, 720 F. 2d 1022 (1983).

(4) In *Berkemer* we noted that "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." 468 U. S., at 442. The Maine court eschewed this objective test, substituting instead the "subjective belief of the defendant." But see *State* v. *Willis*, 145 Vt. 459, 475, 494 A. 2d 108, 116 (1985) ("Inquiring into the subjective thoughts of either the police or the defendant is likely to pervert the factfinding process in a *Miranda* hearing . . ."); *State* v. *Cruz-Mata*, 138 Ariz. 370, 373, 674 P. 2d 1368, 1371 (1983) (the test is not whether the defendant "felt" he or she was in custody, but rather whether objective indicia of arrest are present, including the site of the questioning, the length of the interrogation, and the method used to summon the individual); *People* v. *Viduya*, 703 P. 2d 1281, 1286 (Colo. 1985) ("We have held that this question of custody turns on an objective assessment of whether a reasonable person in the suspect's position would believe himself to be deprived of his freedom of action in any significant way"). The Oregon Supreme Court espouses yet a third view, stating that the touchstone of the "in custody" determination is whether "the officer should be aware that the totality of circumstances in which the interrogation takes place is such that the person questioned would reasonably believe he is not free to leave." *State* v. *White*, 297 Ore. 302, 310, 685 P. 2d 983, 987 (1984).

With this confusion, it is perhaps helpful to turn for guidance to the *Miranda* decision itself. In *Miranda*, the Court stated that "[b]y custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* v. *Arizona*, 384 U. S. 436, 444 (1966). As the trial court found, in this case there is no indication that the questioning took place in a context where respondent's freedom was restricted in any significant way. Respondent voluntarily accompanied the officers. He never asked to leave. The police never told him that he was not free to leave, never used any physical restraint of any kind, never threatened him, never confronted him with any incriminating evidence, and dropped him off at home at the end of the trip. Respondent was not being coerced by the "inherently compelling pressures" of a custodial setting. See *Miranda, supra,* at 467. As he testified in the suppression hearing, he took police on the long road trip "to keep them off [his] track." It was he, and not the police, who exploited the situation.

Respondent may have therefore unwisely placed himself in an uncomfortable position, but no more so than a suspect who voluntarily comes to the police station for questioning, see *Beckwith, supra; Oregon* v. *Mathiason,* 429 U. S. 492 (1977), or a motorist who is involuntarily detained for questioning concerning a traffic violation. See *Berkemer, supra.*

The Maine Supreme Judicial Court's rejection of the factual findings of the trial court cannot be reconciled with the decisions of this and other courts. I would grant the petition and give plenary consideration to this case.