150 F.3d 185
 CONCOURSE REHABILITATION & NURSING CENTER INC.; Concourse
Nursing Home, Plaintiffs-Appellants,
v.
Brian WING, individually and as Acting Commissioner of the
New York State Department of Social Service; Barbara A.
DeBuono, individually and as Commissioner of the New York
State Department of Health, Defendants-Appellees.
 Docket No. 97-7222.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 1, 1997.
Decided July 17, 1998.
 
 Marvin Neiman, Neiman Ginsburg & Mairanz, New York City (Theodore Mairanz, Betsy R. Malik, of counsel), for Plaintiffs-Appellants.
 James M. Hershler, Assistant Attorney General of the State of New York, New York City (Dennis C. Vacco, Attorney General, Barbara G. Billet, Solicitor General, Thomas D. Hughes, Assistant Solicitor General, of counsel), for Defendants-Appellees.
 Before: WINTER, Chief Judge, NEWMAN, and WALLACE,* Circuit Judges.
 WINTER, Chief Judge:
 
 
 1
 Concourse Rehabilitation & Nursing Center, Inc. and Concourse Nursing Home (collectively, "Concourse"), successors in the operation of a nursing care facility, appeal from Judge Mukasey's dismissal of their complaint against the Commissioners of the New York State Department of Health ("DOH") and Department of Social Services ("DSS"). The gravamen of Concourse's complaint is that appellees violated federal law by failing to comply with state regulations promulgated under the federal Medicaid Act, 42 U.S.C. § 1396a. Judge Mukasey held that Concourse's claim for relief was barred by the Eleventh Amendment for failure to allege a violation of federal law. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). We affirm.
 
 BACKGROUND
 
 2
 We of course accept the factual allegations of the complaint as true. See Jaghory v. New York State Dept. of Educ., 131 F.3d 326, 329 (2d Cir.1997). At all pertinent times, Concourse operated a nursing care facility in the Bronx. Concourse is entitled to reimbursement pursuant to the joint federal and state Medicaid program for services rendered to eligible patients. See 42 U.S.C. § 1396 et seq. To qualify for participation in the Medicaid program, a state must formulate a "State plan" that meets the requirements set forth in 42 U.S.C. § 1396a(a) and submit that plan to the Secretary of the U.S. Department of Health and Human Services for approval. See New York v. Shalala, 119 F.3d 175, 177 (2d Cir.1997). Under New York's State plan, the DOH is responsible for promulgating reimbursement rates for health care facilities pursuant to New York Public Health Law § 2807(7). The DSS is responsible for auditing the reimbursement rates pursuant to New York Social Services Law § 368-c. The purpose of the auditing process is to verify the accuracy of a health care facility's reports of costs filed with the DOH; the DSS has no rate-making authority of its own.
 
 
 3
 Local 144 of the Hotel, Hospital, Nursing Home & Allied Services Union ("Local 144") sued Concourse in April 1987 for failure to pay certain wage and benefit increases owed to its employees. Concourse's principal defense was that the State of New York had not reimbursed Concourse sufficiently to cover those increases. The DOH thereafter agreed to act on several appeals filed by Concourse and to pay Concourse $8.2 million for distribution to Concourse's employees. In April 1991, Concourse paid the $8.2 million to Local 144 to settle the dispute. The DSS then audited Concourse and determined that the DOH had overpaid Concourse by $2.2 million. The DSS began recouping the alleged overpayment by withholding reimbursements due Concourse for Medicaid services.
 
 
 4
 Concourse brought the present action alleging that the DSS had exceeded its authority under New York's State plan by reducing the payment to Concourse calculated by the DOH, thereby violating 42 U.S.C. §§ 1983 and 1396. It sought a declaratory judgment that the DSS audit violated both federal and state law, and an injunction prohibiting the DSS from recouping any of the $8.2 million paid to Concourse. In denying Concourse's motion for a preliminary injunction, Judge Mukasey held that Concourse had not alleged a federal claim and that the action based on state law was therefore barred by the Eleventh Amendment. See Concourse Rehab. & Nursing Ctr., Inc. v. Wing, 945 F.Supp. 740, 742 (S.D.N.Y.1996). After Concourse stipulated to the dismissal of its entire complaint in light of this ruling, it brought the present appeal.
 
 DISCUSSION
 
 5
 Concourse's asserted federal claim is not that New York's State plan violated federal law. Rather, it asserts that the DSS failed to comply with the State plan and that this failure violates federal law, namely 42 U.S.C. § 1396a(a)(1).[1] Section 1396a(a)(1) states in part that a State plan must "provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them."
 
 
 6
 Judge Mukasey held that, under our decision in Oberlander v. Perales, 740 F.2d 116 (2d Cir.1984), Concourse's allegations amount only to a violation of state law and, accordingly, its claims are barred by the Eleventh Amendment. See Concourse, 945 F.Supp. at 742. In Oberlander, a nursing facility sued various New York state officials, alleging that, inter alia, the defendants violated state regulations in reducing the reimbursement rates provided to the facility. Because the State plan was required to conform to the requirements of 42 U.S.C. § 1396a, the facility argued, any violation of the State plan was "ipso facto a violation of the federal Medicaid laws and regulations." Oberlander, 740 F.2d at 119. We disagreed, noting that "there is no authority anywhere supporting the proposition that a state Medicaid regulation becomes a federal law merely by virtue of its inclusion in a state plan required by federal law." Id. Rather, to state a federal claim, a plaintiff must allege a "specific conflict between a state plan or practice on one hand and a federal mandate on the other." Id.
 
 
 7
 Concourse agrees that, under Oberlander, its complaint falls short of alleging a violation of federal law. Concourse contends, however, that our holding in Oberlander has not survived the Supreme Court's decision in Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). At issue in Wilder was the so-called Boren Amendment to the Medicaid statute. It directed that a State plan provide for reimbursement of covered entities "through the use of rates ... which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U.S.C. § 1396a(a)(13)(A) (1996).
 
 
 8
 In Wilder, an association of hospitals filed suit against several Virginia state officials, claiming that Virginia's State plan violated the Boren Amendment because its reimbursement rates were not "reasonable and adequate." Wilder, 496 U.S. at 503, 110 S.Ct. 2510. The Court held that the Boren Amendment created a right enforceable by health-care providers under 42 U.S.C. § 1983, see Wilder, 496 U.S. at 509-10, 110 S.Ct. 2510, and that this right had both a procedural component--rates had to be accompanied by "findings" and "assurances" that they were "reasonable and adequate"--and a substantive component--rates had in fact to be "reasonable and adequate." Id. at 510, 110 S.Ct. 2510. Accordingly, providers may sue in federal court for injunctive relief to ensure that they are reimbursed according to "reasonable and adequate" rates. Id. at 510, 516, 110 S.Ct. 2510.
 
 
 9
 Concourse's claim is not brought under the Boren Amendment.[2] It asserts, however, that the logic of Wilder extends to suits brought pursuant to 42 U.S.C. § 1396a(a)(1). In other words, if Section 1396a(a)(13)--the Boren Amendment--is enforceable in a Section 1983 claim, Section 1396a(a)(1) must be similarly enforceable.
 
 
 10
 Section 1396a(a)(1) requires that a State plan "provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them." Arguably, this language supports Concourse's claim that, under the logic of Wilder, a health-care provider has a federal right under Section 1396a(a)(1), enforceable through Section 1983. Like the Boren Amendment as interpreted in Wilder, this right arguably includes both a procedural component--that the State plan provide it will be "in effect"--and a substantive component--that the plan is in fact "in effect" and "mandatory" if administered by a political subdivision of the state.
 
 
 11
 In support of its argument, Concourse also relies on 42 U.S.C. § 1396c, which authorizes the Secretary to withhold funds from a state when either the State plan or the administration of that plan fails to comply with Section 1396a. The Secretary has announced that "[a] question of noncompliance in practice may arise from the State's failure to actually comply with a Federal requirement, regardless of whether the plan itself complies with that requirement." 42 C.F.R. § 430.35(c) (emphasis added); cf. Wilder, 496 U.S. at 512, 110 S.Ct. 2510 (relying on both § 1396c and 42 C.F.R. § 430.35 in concluding that Boren Amendment is mandatory on states). Concourse concludes that it "logically follows that there is a federal right to enforce compliance with an approved State plan." Appellants' Reply Br. at 7. We disagree.
 
 
 12
 Concourse's reading of Section 1396a(a)(1) would potentially expand our jurisdiction to every claim that a state agency has in an individual matter misapplied or misinterpreted a State plan. We have resisted similar arguments in the past, see Kostok v. Thomas, 105 F.3d 65, 68 (2d Cir.1997) ("the failure of a state authority to comply with state regulations does not, as a facial matter, implicate an interest secured by federal law ...."), and we are not alone. See, e.g., Mallett v. Wisconsin Div. of Vocational Rehabilitation, 130 F.3d 1245, 1253 (7th Cir.1997) (Section 1983 "is not an appropriate means of remedying an isolated violation of an otherwise legal plan").
 
 
 13
 Our difficulty with Concourse's argument is that it focuses more on whether Section 1396a(a)(1) creates federal rights enforceable by private parties--we may assume without deciding that it does--than on whether the rights it creates afford the relief Concourse seeks. Concourse reads Section 1396a(a)(1) to render every State plan the equivalent of a federal statute or regulation. However, this is neither the only nor even the most likely interpretation. Section 1396a(a)(1) can easily be read to require only that a State plan must provide that it is of statewide scope and that, when political subdivisions are called upon to administer the State plan, they not substitute their substantive regulations for those of the State plan. Accord Suter v. Artist M., 503 U.S. 347, 359, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992) (stating that the term "in effect" in 42 U.S.C. § 671(a)(3), a provision with language identical to that in Section 1396a(a)(1), "is directed to the requirement that the plan apply to all political subdivisions of the State, and is not intended to otherwise modify the word 'plan' "); Harris v. James, 127 F.3d 993, 1011 (11th Cir.1997) (applying Suter to Section 1396a(a)(1)); but see Oklahoma Nursing Home Ass'n v. Demps, 792 F.Supp. 721, 728 (W.D.Okla.1992) (declining to follow Oberlander and holding that § 1396a(a)(1) "requires states to adhere to their Plans").
 
 
 14
 Absent a clear expression of congressional intent, we will not infer a legislative decision to convert all claims of administrative error in applying state regulations into questions of federal law. The Secretary's right to withhold funds under Section 1396c is not inconsistent with such a reading. It constitutes a remedy--not for isolated or random administrative error, but for a failure of a State plan to provide that it is statewide and of state officials to insure that it in fact applies statewide.
 
 
 15
 Therefore, a better analogy to Wilder is that the right conferred by Section 1396a(a)(1) has a procedural component--that the plan must provide that it applies statewide--and a substantive component--that the plan is in fact applied statewide even if administered by a political subdivision.[3] See, e.g., Sobky v. Smoley, 855 F.Supp. 1123, 1134-36 (E.D.Cal.1994) (State plan that denies medical service based on recipient's county of residence violates "statewide" requirement in Section 1396a(a)(1) and is actionable under Section 1983). In this regard, it is important to note that Wilder involved a dispute over the legality of a State plan, not a dispute over its application or interpretation. See Clifton v. Schafer, 969 F.2d 278, 285 (7th Cir.1992) ("Wilder held simply that health care providers could sue to enforce their right to a state plan that did not violate the Boren Amendment; it did not hold that providers had a right to challenge any deviation the state might make from a plan that did comply with federal law.").
 
 
 16
 Concourse does not contend that New York's State plan does not operate statewide. It alleges only that DSS's action in requiring recoupment from Concourse was a misapplication or misinterpretation of the State plan. As we stated earlier in Oberlander, 740 F.2d at 119, and more recently in Kostok, 105 F.3d at 68-69, such an allegation is not sufficient to state a federal claim absent allegations of a specific conflict between a State plan or practice, on the one hand, and a federal mandate on the other. Wilder suggests nothing to the contrary and in no way overrules Oberlander.
 
 
 17
 Because Concourse's complaint does not state a federal claim and because the Eleventh Amendment bars Concourse's state-law claims, we affirm the district court's dismissal of Concourse's complaint.
 
 
 
 *
 The Honorable J. Clifford Wallace, of the United States Court of Appeals for the Ninth Circuit, sitting by designation
 
 
 [1]
 Violations of the Social Security Act constitute violations of Section 1983. See Wilder, 496 U.S. 498, 509-10, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990); Maine v. Thibodeau, 475 U.S. 1144, 1144, 106 S.Ct. 1799, 90 L.Ed.2d 343 (1986)
 
 
 [2]
 The Boren Amendment was in fact repealed on August 5, 1997. See The Balanced Budget Act of 1997, Pub.L. No. 105-33, § 4711(a)(1), 111 Stat. 251, 507-08 (1997)
 
 
 [3]
 We need not address the question of whether the requirement of statewide scope is indeed enforceable by a health-care provider under Section 1983. We note merely that, even if the holding and analysis in Wilder were to apply to Section 1396a(a)(1), the provider would have a right only to: (i) a State plan that provided for statewide scope and (ii) compliance in fact with the requirement of statewide scope