STATE of Missouri, Plaintiff–
Respondent,

v.

Brent LONDAGIN, Defendant–
Appellant.

No. 24819.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 25, 2003.

Motion for Rehearing or Transfer to
Supreme Court Denied March 18, 2003.

Nancy A. McKerrow, Assistant State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Richard A. Starnes, Assistant Attorney General, Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Brent L. Londagin (defendant) appeals his conviction, following a jury trial, of forcible sodomy. § 566.060.[1] This court affirms.

Darren Gallup, a detective with the Joplin, Missouri, Police Department, was contacted by the director of a regional center that provided independent supported life assistance for persons with disabilities. He was asked to attend a meeting that had been arranged to investigate an allegation regarding a resident of the regional center. Detective Gallup met with the director of the regional center. There were others at the meeting, including Dr. Ben Leavens, a veterinarian, who had information regarding the resident who was the subject of the discussion. Defendant previously worked at the regional center as a "life skills trainer." Dr. Leavens reported that defendant admitted having abused a resident of the regional center, Joseph Waers.

Defendant was employed at the center from July 1998 through November 1998. Joseph Waers is a mentally retarded man. Defendant assisted Waers with cooking, cleaning and other necessary tasks while employed at the center. On October 29, 1998, Waers was taken to Freeman Hospital in Joplin with abdominal pain and rectal bleeding. The examining physician discovered a perforation of Mr. Waers' colon. Surgery was required to correct the perforation and a colostomy was performed.

Detective Gallup and Veva Taggart, an investigator employed by the department of health, went to defendant's place of employment and spoke with defendant. They met with defendant in a conference room made available by his employer. Detective Gallup told defendant he had re-

---

1. References to statutes are to RSMo 1994.

ceived information that defendant admitted inserting a plunger into Waers' anus and, on other occasions, having had sexual contact with Waers. Ms. Taggart was in the room at the start of the interview. Later, at defendant's request, she left the room.

Defendant acknowledged that he knew Waers had experienced medical problems, but at first denied he had anything to do with those problems. Detective Gallup explained, "But later on in our conversation, he admitted to putting a plunger in Joseph's anus—a plunger handle in Joseph's anus and that might be what caused the injuries." Defendant was asked to write his statement. Detective Gallup left the room. Defendant spent about 30 minutes writing a statement that essentially restated what he had told Detective Gallup.

Defendant moved to suppress the written statement and the oral statements. At trial he objected to the use of the written statement as evidence and to Detective Gallup's testimony concerning the oral statements. The motion to suppress was denied following an evidentiary hearing, and defendant's objections to the admission in evidence of the written statement and to Detective Gallup's testimony about the oral statements were overruled. The written statement was admitted in evidence and Detective Gallup was permitted to relate what defendant told him.

■ Defendant's first point on appeal contends the trial court erred in denying his motion to suppress his oral and written statements to Detective Gallup and in admitting defendant's written statement in evidence. He argues his statements were involuntary in that he had not received the *Miranda*[2] warning before making the statements to Detective Gallup.

Point I asserts error in denying the motion to suppress evidence with respect to defendant's written statement and the oral statements made to Detective Gallup. The only error alleged with respect to evidence admitted at trial is directed to the written statement. Point I alleges the trial court erred "in allowing the State to introduce [defendant's] written statement (St.Exh.1) into evidence over [defendant's] objections ... in that [defendant] was in custody during Det. Gallup's interrogation but he was not given the *Miranda* warnings and therefore his statements were involuntary."

■ "The scope of the issue for determination on appeal is that framed in the point relied on. *State v. Talbert*, 873 S.W.2d 321, 323 (Mo.App. S.D.1994). 'A motion to suppress, in and of itself, preserves nothing for appeal, and ordinarily, a point relied on that refers only to a ruling on such a motion is fatally defective.' *State v. Cardona–Rivera*, 975 S.W.2d 200, 203 (Mo.App. S.D.1998)." *State v. Patino*, 12 S.W.3d 733, 740 (Mo.App.1999). Arguably, Point I does not preserve a claim of error directed to the oral statements for appellate review. Nevertheless, under the circumstances of this case, this court will consider Point I as asserting error in denying the motion to suppress evidence and in admitting in evidence the written statement and testimony concerning the oral statements.

The determinative issue in Point I is whether defendant was in custody during Detective Gallup's interrogation. The *Miranda* warning was required if the inquiry of defendant was a custodial interrogation. *State v. Hosto–Worthy*, 877 S.W.2d 150, 152 (Mo.App.1994). It was not required if the interrogation was an inquiry based only on defendant having become the focus

<hr/>

2. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

of the investigation without having been taken into custody. *Id.*

■ *U.S. v. Griffin,* 922 F.2d 1343 (8th Cir.1990), identifies factors to be considered in determining if a defendant is in custody when interrogated. They include an accused's freedom to leave the location where the inquiry takes place and the purpose, location, and length of the interrogation. *Id.* at 1348. *Griffin* concludes, however, that these factors, alone are not conclusive. Other indicia of custody include:

(1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not under arrest;

(2) whether the suspect possessed unrestrained freedom of movement during questioning;

(3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to answer questions;

(4) whether strong arm tactics or deceptive stratagems were employed during questioning;

(5) whether the atmosphere was police dominated; or,

(6) whether the suspect was placed under arrest at the termination of questioning.

*Id.* at 1349.

■ *State v. Werner,* 9 S.W.3d 590 (Mo. banc 2000), approved this method of analysis. *Werner* noted, however, that "[t]his list is not exhaustive. *See Maine v. Thibodeau,* 475 U.S. 1144, 1146, 106 S.Ct. 1799, 90 L.Ed.2d 343 (1986). In examining the totality of the circumstances, courts may also consider an individual's personal background, experience, familiarity with police questioning, maturity, education, and intelligence. *United States v. Zahrey,* 963 F.Supp. 1273, 1278 (E.D.N.Y.1997)." *Id.* at 595–96.

Detective Gallup arrived at defendant's place of employment about 10:45 a.m. He talked to defendant's supervisor and asked where he could talk with defendant. He was taken to a conference room. Defendant was not placed under arrest. Detective Gallup estimated that his conversation with defendant took about 30 minutes; that during the first half of that time, the investigator from the health department was present. After his conversation with defendant, Detective Gallup left the room to permit defendant to write his statement. Defendant took "20 or 30 minutes" to write his statement. Detective Gallup estimated the total time he was at defendant's place of employment was "about an hour and 15 minutes total."

The first factor noted in *Griffin* is whether the suspect was informed that the questioning was voluntary, that he was free to leave or request the officer or officers to do so, or that the suspect was not under arrest. Detective Gallup testified he did not arrest defendant when he and Ms. Taggart interviewed him. He testified at the suppression hearing, "I told him that he wasn't under arrest and was free to go." At trial, Detective Gallup explained he told defendant several times that defendant could leave any time he wanted.

Detective Gallup provided insight as to the second, fourth and fifth factors. He was asked the following questions concerning his interview of defendant and gave the following answers:

Q. Did you make any threats or promises to the defendant?

A. No.

Q. Did you have your—were you carrying a firearm?

A. No.

Q. Did you have any kind of a weapon with you?

A. No.

Q. Did you have your handcuffs with you?

A. No.

Q. Did you have any kind of—any type of weapon at all?

A. No, my handcuffs and gun were in the car and I had my badge on and that's it.

Defendant's movement was not restrained during questioning by Detective Gallup. Neither "strong arm tactics" nor "deceptive stratagems" were employed. Wearing his badge evidenced the identity of Detective Gallup's official position as a police officer. This court does not discern an atmosphere of police domination at defendant's interrogation.

Upon being contacted by Detective Gallup at his place of employment, defendant acquiesced to official requests to answer questions. Defendant was not arrested at the termination of questioning. Applying the analysis of factors identified in *Griffin* and followed in *Werner,* this court concludes the interrogation of defendant was not custodial.

Defendant suggests, nevertheless, that the inquiry of Detective Gallup was done in a manner intended to circumvent requirements of *Miranda.* He argues the circumstances in this case are akin to those in *State v. Zancauske,* 804 S.W.2d 851 (Mo.App.), *cert. denied,* 502 U.S. 817, 112 S.Ct. 73, 116 L.Ed.2d 47 (1991). The defendant in *Zancauske* appeared voluntarily at a sheriff's office where he was questioned for one and one-half hours. The *Miranda* warning was not given. During the interrogation, the defendant was told another suspect had admitted the crime being investigated and implicated Zancauske, after which Zancauske gave a written statement. This court held that Zancauske became a major suspect in the case at the time he was implicated by the other suspect; that his subsequent confession, elicited without having given the *Miranda* warning, was not voluntary.

The appeal in *Zancauske* was an appeal of the trial court order granting a suppression motion directed to the defendant's statement. In granting the motion, the trial judge noted what occurred after the other suspect implicated Zancauske:

> The police officers then clearly knew at that point in time that the defendant was a major suspect in the case, brought him back into the room, interrogated him, indeed, confronted him with the fact that the confession had been made.... However, the Court is going to have to rule that this was a custodial interrogation at the time the defendant made his statements.

804 S.W.2d at 854–55.

*Zancauske* states that when an investigation focuses on a suspect and police have reasonable grounds to believe a crime was committed and he or she committed it, the *Miranda* warning is required. *Id.* at 858. *Zancauske* held that the point when the *Miranda* warning was required was "when 'the police [could] be expected to pursue the case against the defendant with vigor.'" *Id.* at 859, quoting *State v. Pierce,* 556 S.W.2d 216, 218 (Mo.App.1977). This court held, under the facts in *Zancauske,* that police had improperly attempted to circumvent requirements of *Miranda.*

■ This case differs from *Zancauske* in a variety of ways, including the length of time of the interview before a statement was made and a lack of evidence, at the time of the interview, that would cause police to pursue the case against this defendant "with vigor." The record does not

reflect an effort by Detective Gallup to circumvent requirements of *Miranda.* Rather, defendant was being asked preliminary, investigatory questions for the purpose of determining if the medical difficulties the victim experienced were the product of criminal action. "A person who is being asked preliminary, investigatory questions by the police is not in custody for the purpose of requiring a *Miranda* warning." *State v. Norton,* 904 S.W.2d 265, 271 (Mo.App.1995); *see also State v. Barrett,* 41 S.W.3d 561, 565 (Mo.App.2001). Point I is denied.

Point II is directed to the trial court permitting testimony by Detective Gallup and Dr. Ben Leavens regarding statements made by defendant. Defendant contends the trial court erred in permitting them to testify concerning statements made by defendant, contrary to his objections, because "the State had not established the *corpus delicti* for forcible sodomy before being permitted to introduce [defendant's] statements. The only evidence the State produced prior to [defendant's] statements were that Joseph Waers had had an operation to repair a hole in his colon which may have been caused by trauma."

Appellate review is limited to consideration of only those issues presented and preserved in points relied on. *Hocker Oil Co., Inc. v. Barker–Phillips–Jackson, Inc.,* 997 S.W.2d 510, 519 (Mo.App.1999); *Tindall v. Holder,* 892 S.W.2d 314, 322 (Mo. App.1994); *Don L. Tullis & Associates, Inc. v. Gover,* 577 S.W.2d 891, 893 (Mo. App.1979); *Brewer v. Blanton,* 555 S.W.2d 381, 383 (Mo.App.1977). Point II does not complain that the state failed to prove the *corpus delicti* of forcible sodomy, the offense with which defendant was charged, but that it was error to admit evidence of incriminating statements defendant made before otherwise establishing the crime with evidence independent of those statements.

Point II is based on the principle that "in order to support a conviction, the existence of the crime charged must be proven by evidence independent of a mere confession of guilt." *State v. Weston,* 912 S.W.2d 96, 100 (Mo.App.1995). *Corpus delicti* is "the body of the crime." *State v. Joy,* 315 Mo. 7, 285 S.W. 489, 495 (1926) (Blair, J., concurring). It consists of the elements of the particular offense charged. *Id.; State v. Hayes,* 15 S.W.3d 779, 786 (Mo.App.2000); *State v. Weston, supra.* The elements of proof for forcible sodomy are that a defendant (1) knowingly (2) had deviate sexual intercourse with the victim (3) by means of forcible compulsion. *State v. Crenshaw,* 59 S.W.3d 45, 48 (Mo.App. 2001); § 566.060.1. Those elements need not be proved prior to admission of a defendant's confession. "[E]vidence of the *corpus delicti* may follow a defendant's confession" in the course of a trial. *Id.* at 49.

Although not challenged in the point relied on, defendant's argument in support of Point II questions the sufficiency of the evidence at trial. That is not the issue set forth in the point on appeal to which the argument is directed. It, therefore, need not be, and is not, considered in addressing Point II. *Brewer v. Blanton, supra.* Point II is denied.

Defendant's Point III contends the trial court erred in denying his motion for judgment of acquittal at the close of all evidence and in sentencing him for the offense of forcible sodomy "because the state did not prove beyond a reasonable doubt that [defendant] inserted a plunger into the anus of Joseph Waers for the purpose of arousing or gratifying the sexual desire of any person (as required in the

verdict director)." [3] Defendant argues the evidence was that the insertion of the object into the victim's anus was to dislodge impacted feces; that there was no evidence that the act was for the purpose of arousing or gratifying his sexual desire.

Defendant's written statement was admitted in evidence as State's Exhibit No. 1. In the statement, defendant admitted taking a plunger, putting a glove over it, and inserting it in the victim's anus. He stated he "stuck it in about 3″ or so to try to get the poop out." Detective Gallup testified that defendant gave the reason for his actions in his oral statements. Detective Gallup also testified that defendant told him when he gave Mr. Waers a bath, "he played what he called wiggle his penis back and forth just to see what it would do to see if he had any reaction to that." Detective Gallup was asked whether defendant's statement was that he "wiggled his own penis or is he describing the victim's penis." Detective Gallup answered, "He wiggled the victim's penis." Detective Gallup continued, "And then later he said that he was wrestling around with him on the floor and was trying to do what he said humping from behind, but he said that he had clothes on at the time." Detective Gallup was asked if he understood that to be a sexual act. He answered, "Yes."

Defendant's written statement was consistent with Detective Gallup's testimony. Defendant recited he had "wiggled" the victim's penis "to see if there was any reaction (there was none) to see if he got erect or not. He did not." Defendant's written statement contained the following reference to what he describe as "hump[ing]."

The only other thing that happened that I remember is we were wrestling on the floor [ (]we sometimes played like that for interaction so that he could move around and get some exercise)[.] We had our clothes on, I was on top of him for less than a minute (he was on his stomach I was on top[) ] wrestling and got an urge to kind of hump on him and did for about 20 seconds and knowing that there was no arousal I stopped and got up and quit wrestling.

Defendant stated in his written statement that he felt ashamed after the wrestling incident. He added, "I can't believe I did that." He offered as an explanation that he and his wife were having problems; that he "was seeing a girlfriend, if you want to call her that, just messing around not sex but still and [sic] frustrated about my job and my career and ... traumatic stress." Defendant's statements gave a sexual overtone to his actions although denying the act performed with the plunger was sexually oriented.

A jury may draw such reasonable inferences from the evidence as the evidence will permit. *State v. Gaskins*, 66 S.W.3d 110, 115 (Mo.App.2001). A jury may consider other sexually oriented acts of a defendant directed to the victim in determining the defendant's motive. *State v. Murdock*, 928 S.W.2d 374, 378 (Mo.App. 1996). It is the jury's duty to weigh the evidence and resolve conflicts in that evidence in determining guilt. *State v. Davis*, 497 S.W.2d 204, 207 (Mo.App.1973). This court's review of that function is limited to determining whether there was substantial evidence that, if believed by a jury, would sustain a guilty verdict. *Id.* The jury found that defendant intended to arouse or gratify sexual desire in the acts he committed. There was substantial evi-

3. § 566.010(1) includes in the definition of deviate sexual intercourse, one of the elements for proving the offense of forcible sodomy, that the act done was "for the purpose of arousing or gratifying the sexual desire of any person."

dence from which the jury could make that determination. Point III is denied. The judgment of conviction is affirmed.

SHRUM, J., and RAHMEYER, C.J., concur.