[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR CHANGE OF VENUE
 I. PROCEDURAL BACKGROUND
Sometime between October 31 and November 1, 1996, two individuals entered the West Hartford home of John and Patricia Haugh. During the course of an apparent burglary, both Dr. and Mrs. Haugh were killed. Within days, the defendant and a second suspect were arrested. The state CT Page 8626 has charged the defendant with Capital Felony, Murder, Felony Murder, Burglary, Conspiracy to Commit Burglary, Larceny and Conspiracy to Commit Larceny. His trial is scheduled to begin October 1, 2000.
By motion dated May 3, 2000, the defendant seeks a change in venue claiming:
 "3. The victims were well known and prominent members of the community.
 "4. Said coverage has included, inter alia, items containing the police investigation and subsequent arrest of the defendant, the personal characteristics of the victims and the effect of their deaths on family and friends, and the arrest and prosecution of the defendant for alleged crimes unrelated to the case.
 "5. Said coverage has continued and will continue in nature and intensify until and including the trial of this case.
 "6. Result of the foregoing is the creation of a substantial likelihood that the defendant will be denied his constitutionally guaranteed right to a fair trial within the Judicial District of Hartford."
The State opposes this motion. Therefore, a hearing was held on June 21 and 26, during which the defendant offered eighteen exhibits, including four television tapes and thirty newspaper articles. Additionally, the defendant provided a public opinion survey conducted by the University of Connecticut's Center for Survey Research and Analysis wherein residents of Hartford and New Haven County were questioned concerning, inter alia, their familiarity with the Haugh homicides.
The court has reviewed the exhibits and oral testimony, and concludes that the defendant's motion should be denied without prejudice.
 II. GOVERNING LEGAL PRINCIPALS
In the present case, the defendant's central allegation is that adverse pretrial publicity would taint any Hartford proceeding. He therefore seeks a transfer to a different judicial district. New Haven County has been suggested as a possible site. CT Page 8627
Among the many protections enumerated in our state and federal constitutions are the rights to a public trial and a trial by jury. A public trial confers benefits upon both society and the accused. It not only protects defendants against persecution but also allows a community to observe and appreciate the criminal justice process.[1]
In balancing the rights of the defendant and the surrounding community, the court is guided by Practice Book Section 41-23 which provides: "Upon motion of the prosecuting authority or the defendant, or upon his own motion, the judicial authority may order that any pending criminal matter be transferred to any other court location: (1) If the judicial authority is satisfied that a fair and impartial trial cannot be had where the case is pending, or (2) If the defendant and the prosecuting authority agree." The defendant bears the burden of showing that he could not otherwise receive a fair and impartial trial." Statev. Townsend, 211 Conn. 215, 224, 558 A.2d 699 (1989). When extensive publicity surrounds a criminal trial, a defendant's right to an impartial jury can be affected in two ways: (1) where the pretrial publicity has so saturated the community that prejudice is presumed; and (2) when the accused can demonstrate actual prejudice in the jury panel.
In assessing "presumed prejudice" the inquiry is whether the conviction was "obtained in a trial atmosphere that had been utterly corrupted by press coverage" or the proceedings were "entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob." Murphy v.Florida, 421 U.S. 794, 798, 799 (1975). Among the factors considered are: the size of the relevant community; the time between the crime and the trial; whether the past crimes of the defendant had been saturated throughout the community; the amount of media coverage and whether their treatment of the case is either factual or inflammatory; whether the press was allowed to make a "circus" out of the trial. Murphy v. Florida,supra, 421 U.S. 797-801; State v. Crafts, 226 Conn. 237, 257, 627 A.2d 977
(1993).
The necessary predicate for a finding of presumptive prejudice is exemplified by Rideau v. Louisiana, 373 U.S. 723, 726 (1963), Estes v.Texas, 381 U.S. 532, 551 (1965), and Sheppard v. Maxwell, 384 U.S. 333,363 (1966). In Rideau, prejudice was presumed when the defendant's twenty-minute confession was televised three times in a community of 150,000. In Estes, the courtroom was overrun by the press; television cameras were permitted within the bar, and pretrial proceedings were televised and viewed by some jurors. In Sheppard, the trial was infected not only by a background of extremely inflammatory publicity, but "bedlam reigned at the courthouse during the trial and newsmen took over practically the entire courtroom, hounding most of the participants, CT Page 8628 especially [the defendant]" Sheppard, supra, 384 U.S. 355.
On the other hand, in determining whether actual prejudice invaded the jury box, the relevant inquiry focuses on the partiality of an individual juror. If the voir dire examination of prospective jurors is thorough and extensive, and defense counsel are permitted fully to explore the level and effects of each prospective juror's exposure to publicity concerning the defendant, then actual prejudice cannot be presumed. See State v.Marra, 195 Conn. 421, 431-33, 489 A.2d 350 (1985). See also State v.Miller, 202 Conn. 463, 480, 522 A.2d 249 (1987).
To the extent that individuals might exhibit some knowledge of the case, it is clear "[q]ualified jurors need not . . . be totally ignorant of the facts and issues involved." State v. Marra, supra, 195 Conn. 433,quoting Murphy v. Florida, supra, 421 U.S. 800-01. "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irwin v. Dowd, 366 U.S. 717,723 (1961). There is nothing inherently suspect about a juror's testimony that he can judge a case fairly and impartially. Smith v. Phillips,455 U.S. 209 n. 7 (1982).
With these principles in mind, the court reviewed the evidence submitted by the defense.
 III. EXAMINATION OF THE EVIDENCE PRESENTED
A. Print Media
During the course of the hearing, the defendant submitted Exhibits which included all articles from three Hartford and one New Haven newspaper. Examining these exhibits in turn:
1. The New Haven Register
Defense Exhibit A contained three articles from the New Haven Register. All three appeared either shortly after the homicides or at the time of the defendant's arrest and subsequent arraignment. The news coverage in these articles parallels that of the major Hartford newspapers.
2. The Hartford Courant
Defense Exhibits B and R contain twenty-one articles which appeared in the Hartford Courant. Included in these stories are three obituary notices, a report of a separate West Hartford homicide "definitely not connected" with the Haugh homicide, reports concerning a successful CT Page 8629 fund-raiser for an organization closely associated with Mrs. Haugh, a letter to the editor concerning the need to protect gun ownership, a 1996 year-end news summary, and an article concerning the promotion of the individual originally assigned to prosecute the state's case.
Of the remaining twelve submissions, there were four separate articles between November 5 and November 9, 1996. Each mentioned, in a dispassionate manner, the homicides and subsequent investigation. Additionally they contained relatively brief information concerning the victims, both of whom were prominent members of their local community.
From November 11 to November 27, 1996. there were four more articles. These dealt with a variety of subjects including the defendant's arrest and arraignment. There was some information that the defendant faced other charges. Additionally, there were references in some of these articles to the defendant's alleged confession. Also included were interviews with relatives and associates of the accused who expressed disbelief that the defendant could be involved in such a serious crime. Finally, one article concentrated on the arraignment of the defendant's aunt who was charged with tampering.
After a January 11, 1997 news article concerning a hearing in probable cause in the present case, there were no direct news articles until June of this year. Each of the latter four articles contained factual reports concerning various pretrial proceedings.
3. West Hartford News
There were seven articles in a newspaper circulated primarily in the town of West Hartford. The reports contained in this local paper were news stories concerning the crime and subsequent neighborhood reaction. There were also descriptions of Dr. and Mrs. Haugh and their contributions to the local community.
4. Hartford Advocate
The Hartford Advocate did not contain any news coverage of the Haugh homicides.
B. Other Media Coverage
The defendant introduced evidence that this case was also a mentioned in the broadcasts of four television stations, specifically channels 3, 8, 30, and 61, all of which provided local and statewide coverage. Additionally, there may have been information from a limited access cable station available to West Hartford residents only. Newscasts from the CT Page 8630 first four stations were introduced as Defense Exhibits G — J.
Although the various television stations were unable to give exact date for each of the newscasts presented, it is apparent that the bulk of the coverage was clustered into two separate time frames, the date of the homicides and the date of the arrests. In addition to reporting the crimes, police investigations and subsequent court proceedings, these newscasts also contained information concerning community reaction. Some of the newscasts did give detailed information about the two victims in this case, their lives and their community service. Although there were reports of the defendant's confession, there were also reports indicating that these crimes were not consistent with the defendant's background. Isolated emotional coverage occurred in both the Hartford and New Haven areas.
C. Discussion of Media Coverage
As is usual after crimes of this magnitude, initially there were prominent articles concerning the homicides and their victims. Nevertheless, it is apparent that the reporting concerning the homicides, the police investigation, the arrests, the background of suspects, and subsequent court proceedings was straightforward and factual, neither inflammatory nor sensationalized. Although some reports concerning the victims in this case were certainly emotional, these accounts were confined to the short time frame immediately following the homicides. In short, the reporting was neither extensive, continuous nor intense.
D. Survey Results
The defendant offered the testimony of Professor Christopher Barnes from the University of Connecticut's Center for Survey Research and Analysis. Through this witness, the defendant also introduced Exhibits K and L, telephone surveys and analysis of their results.
In early June of this year, Professor Barnes and his colleagues conducted telephone surveys in both Hartford and New Haven counties wherein approximately 400 respondents in each county were queried concerning their familiarity with both the Haugh homicides and the suspects in that crime. Professor Barnes used accepted telephone survey procedures. His participants were facially qualified as potential jurors, although some classes of potential jurors were excluded from the survey.[2]
Before discussing the facts presented, this court must note that it shares many of the concerns expressed by the court in State v. Reynolds,
CT Page 8631 Superior Court, judicial district of Waterbury, Docket No. Cr4-207279 (Fasano, J., June 7, 1994). The defendant's telephone survey does not reflect the reality of Connecticut's voir dire process. Consequently, although it is an interesting reflection of the initial opinions of randomly selected participants, the survey does not duplicate the wealth of information available to counsel after a complete voir dire.
As noted in a different context by the United States Supreme Court, "It is a major premise of a statistical case that the data base statistically mirrors reality. If it does not in substantial degree mirror reality, any inferences empirically arrived at are untrustworthy." McClesky v. Kemp,481 U.S. 279, 288 n. 6 (1987), citing McClesky v. Kemp, 580 F. Sup. 338
353 (ND Ga. 1984). In the present case, the individuals who volunteered to participate in the telephone surveys were no substitute for actual venire persons. Professor Barnes and his staff telephoned 3389 Hartford residents in order to generate a pool of 400 survey respondents. These 400 individuals were asked brief, sometimes suggestive, questions and were allowed to respond, or not, as they desired. In contrast, venire persons, in court as a result of a court order, are placed under oath and screened through an extensive, compulsory voir dire proceeding. No survey can hope to approach the actual process of jury duty with its attendant responsibility and seriousness.
Turning to the issues presented, page 2 of Professor Barnes' own analysis succinctly summarizes the relevant survey result. Therein he states, "The level of familiarity was not high overall . . ." The fact that the general population in Hartford County was slightly more familiar with these homicides than its counterpart in New Haven County is hardly surprising. Indeed, one should expect that local events are of more concern to local residents than to any other individuals. This "not high overall" familiarity does not suggest that residents cannot follow a judge's instruction.
 IV. APPLICATION OF FACTS TO EXISTING CASE LAW
In light of the foregoing facts, this court now must consider each of the factors highlighted in the Murphy decision. They are, in turn:
1. The Size of the Relevant Community.
In the present case, the relevant community is the Hartford Judicial District. That area contains metropolitan regions, suburbs, and rural communities. It is not the type of isolated community that would, in itself, warrant a transfer of prosecution.
2. The Time Between the Crime and the Trial. CT Page 8632
Nearly four years have elapsed since the Haugh homicides. With the passage of time, the frequency of publicity incidental to this case has subsided considerably. See State v. Crafts, supra, 266 Conn. 259; Pattenv. Yount, 467 U.S. 1025 (1984).
 3. Whether the Past Crimes of the Defendant Had Been Saturated Throughout the Community.
There had been some reference to this defendant's criminal history, both in the print media and on television. These references were isolated, factual, and not inflammatory. Indeed, some of the references were predicates to observation that the homicides at issue were not consistent with the defendant's character.
 4. The Amount of Media Coverage and Whether Their Treatment of the Case Is Either Factual or Inflammatory;
The evidence introduced by the defendant at the hearing on this motion to transfer indicates that the pre-trial publicity primarily involved "straight news stories rather than invidious articles which would tend to arouse will and vindictiveness". State v. Miller, supra, 202 Conn. 478
(1987) (internal quotation and citation omitted). In short, the bulk of the pretrial publicity in the present case was factual only. See Statev. Piskorski, 177 Conn. 677, 684 n. 5., 419 A.2d 466 (1979).
 5. Whether the Press Was Allowed to Make a "Circus" Out of the Trial
This case did not present either the "carnival atmosphere" of Sheppardv. Maxwell, supra, 384 U.S. 358, or an atmosphere "utterly corrupted by press coverage." Murphy v. Florida, supra, 421 U.S. 798. Therefore, while there existed a potential for prejudice, this is not a case where prejudice should be presumed. State v. Marra, supra, 195 Conn. 429-30 (common knowledge of prejudicial information not presumptively prejudicial).
 V. CONCLUSION
This court is satisfied that the defendant can receive a fair trial in the Hartford Judicial District. Individual voir dire can assure the defendant a fair and impartial jury. Accordingly, the defendant's motion for change of venue is denied without prejudice.
Dewey, J. CT Page 8633